ROBERT C. BARTH, Plaintiff-Appellee, v. MAYNARD MASSA *et al.*, Defendants-Appellants.

Fifth District No. 5—88—0185

Opinion filed July 17, 1990.

Thomas A. LeChien, of Belleville, for appellant Michael Lee Massa.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Robert W. Schmieder, and Robert C. Black, of counsel), for appellants Maynard Massa and Sara Massa.

Cook, Shevlin, Keefe & Ysursa, Ltd., of Belleville (Bruce N. Cook, of counsel), for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

On October 3, 1981, plaintiff Robert C. Barth, a Fairview Heights police officer, was shot and wounded in the right leg after responding to a burglary alarm at a sporting goods store. A little more than one year later defendant Michael Lee Massa, who was 15 years old at the time of the incident, confessed to the shooting.

Plaintiff filed suit seeking recovery for his injuries, and his third amended complaint named Michael's parents, Maynard and Sara Massa, as defendants in count I, while counts II and III were directed against Michael for negligence and willful and wanton misconduct. At the close of plaintiff's case, defendants Maynard and Sara Massa's motion for a directed verdict was denied, as was a subsequent motion made at the close of all the evidence. The court did, however, enter a directed verdict in favor of the plaintiff against Michael Massa on counts II and III of the complaint after presentation of the defendants' evidence. The jury returned a general verdict in favor of the plaintiff and against all three defendants in the amount of $130,000. The defendants' post-trial motions were denied and they now appeal. For the reasons stated below, we reverse the judgment against the defendants Maynard and Sara Massa and affirm the judgment against defendant Michael Massa.

The testimony at trial established that the plaintiff responded to a burglar alarm at a sporting goods store at approximately 9:30 p.m. Sergeant Prindable, a fellow officer of the Fairview Heights police

department, arrived on the scene at about the same time as the plaintiff. The officers observed a hole knocked through concrete blocks in the back wall of the store. The officers then heard a crashing noise coming from the front of the store and ran along opposite sides of the store toward the front. Plaintiff observed two figures running westbound and ordered them to halt. Plaintiff testified that one of them turned, lowered a gun over his left arm, and fired at plaintiff; plaintiff then fired one shot in return. The suspect, subsequently identified as defendant Michael Massa, fired a second shot which struck plaintiff in the leg. Plaintiff fell to the ground and heard, but did not see, a third shot. Sergeant Prindable testified that he heard the shots as he came around the side of the building and, upon seeing the plaintiff on the ground, fired six shots at the fleeing suspects, but both escaped.

Michael Massa testified that the gun used in the shooting was a Browning .9 millimeter handgun. Michael had purchased the gun, along with a shotgun and four rifles, one to two weeks before the shooting from a friend named Jeffrey Robb. The guns had been stolen, and Michael was aware of that fact when he bought them. Michael paid for the guns by withdrawing some money from his savings account—"maybe $100"—as a down payment and he paid the balance in installments from money he earned by working for his father as a veterinary assistant. Michael testified that he never told his parents about the stolen guns, and that he kept them hidden in the house. He stated that he never took the stolen guns out to show anyone, and to the best of his knowledge, his parents never knew that he had them.

Michael admitted that he and another boy broke into the sporting goods store to steal ammunition and other items. When the police arrived the boys ran out of the store through a front window and began running down the highway. Michael testified that as they were running away one of the officers fired at them and after the second or third shot he "jerked and the gun starting firing." Michael also stated that he did not aim his gun at the plaintiff and he did not intend to shoot him.

Additional testimony by Michael and other witnesses established that prior to October 3, 1981, Michael owned three pellet or BB guns with his parents' knowledge and permission. These included a $CO_2$ pellet revolver, a .177 caliber BB pistol, and a .22 caliber pellet-type air rifle. Pellets could not be fired out of the air rifle because the bolt was damaged. Michael also stated that he did not have $CO_2$ cartridges for the pellet revolver. Michael further testified that he pos-

sessed a firearm owner's identification (FOID) card. He obtained the card so that he could go hunting with his father at his grandfather's farm. His grandfather owned a 12-gauge shotgun, a pump rifle, and a bolt-action rifle which Michael would be permitted to use while hunting with adults. Michael also testified that he was a member of a target shooting club as well as a member of the National Rifle Association.

Several witnesses testified concerning an incident involving Michael and another boy, Paul Black, shooting BB's or pellets at a group of boys from Michael's backyard. Kathy Rosen testified that she went to the Massa home sometime in September 1981 and questioned Michael about an incident in which some of the neighborhood children, including Rosen's two sons, were shot at by a pellet gun. She stated that Michael told her he was shooting at birds. Mrs. Rosen further testified that Sara Massa came to her home later that day to discuss the incident, and Rosen told Sara that the children had indicated that Michael had been shooting at them.

Robert Hansen, a former Fairview Heights policeman, testified that he received a report on September 22, 1981, of children being shot at with a pellet or BB gun. Eric Nystrom had reported that he had been struck in the thigh by a BB fired by Paul Black, who was with Michael in the Massa's yard. Hansen spoke to Michael and his mother at their house, and Michael stated that he and Black were shooting at the trees and they were not aware that anyone had been hit by the BB's. Hansen stated that he told Sara Massa that the matter would be referred to the youth services coordinator. Hansen also testified, over objection, that he told Sara that Eric Nystrom's father had indicated that this was not the first such occurrence.

Bob Fendwald, youth counselor for the Fairview Heights police department, testified that he received a referral from Officer Hansen regarding Michael Massa in September of 1981. Fendwald testified that he spoke to Sara Massa on the telephone and informed her that counseling services were available, and that it appeared that this was not the first time that such a shooting incident had occurred. He stated that Mrs. Massa was told to call back if she desired counseling for Michael, but she did not do so.

Sara Massa testified that she recalled the visit from Officer Hansen in 1981, and that she talked to Kathy Rosen and Eric Nystrom's father concerning the shooting incident on the same day. She denied, however, that anyone had ever suggested that her son needed counseling. Sara stated that she did not take Michael's pellet rifle away from him following the incident because she knew that it did not

work. Sara further testified that she was unaware that Michael had any rifles or other firearms in his possession at any time prior to his arrest.

Maynard Massa, Michael's father, testified that he was aware of Michael's interest in guns, but he was not aware of the presence of the stolen guns in his home until Michael was arrested for shooting Officer Barth. Maynard also testified that on occasion his father's rifles and shotguns would be stored in his house after a hunting trip. These guns were usually stored in Michael's bedroom closet because it was the largest one in the house. Michael testified that he knew that his grandfather's guns were sometimes stored in his closet, but he "wasn't supposed to mess with them."

In addition to the testimony related above, plaintiff's counsel elicited testimony from Maynard and Sara Massa concerning the events preceding Michael's confession on October 20, 1982, regarding a phone call made by Maynard to Sara from the police station. This phone call was recorded without the knowledge or consent of Maynard or Sara and was the subject of a motion *in limine* by defense counsel. The trial court granted the motion and barred "any use at all of the transcript of that tape recording." Maynard placed the phone call on October 19, 1982, after speaking to the police and to Michael, who was being questioned at the police station. According to Maynard, the police told him that they had reason to suspect that Michael had some guns, including a "Saturday night special," and they requested that Maynard accompany them to search the Massas' home. Maynard then called his wife at home and asked her to look through the house for the gun the police had referred to. He also told his wife to check the closet in Michael's room and to remove "my" rifle and shotgun. Maynard testified that he was referring to his father's guns which were sometimes kept in the closet, and that he used the term "my" because he used the guns more than his father. Maynard stated that he wanted the guns removed from his closet because he didn't want the police to think that they were stolen weapons and he wanted to protect Michael.

Plaintiff's counsel then introduced Maynard's deposition testimony in which he stated that prior to the time the police searched his home in October of 1982, he was not aware of any firearms in the house except for the pellet guns. Maynard stated that he did not mention the possibility that his father's guns might be in Michael's closet because he was confused and misunderstood what plaintiff's counsel meant by the word "prior."

Sara Massa testified that Maynard called her from the police sta-

tion and asked her to check Michael's room for the handgun the police were asking about. He also asked her to check Michael's closet for his shotgun and rifle and remove them. She stated that she searched Michael's room for a pistol, but did not find one. She did find two "long guns" in the back of the closet in Michael's room which she assumed belonged to her husband, and she removed them and placed them in her room. It was subsequently determined that these guns did not belong to Michael's grandfather, but were instead two of the stolen weapons which Michael had purchased.

Ronald Berkhart, a Fairview Heights police officer who participated in the search of the Massa home, testified that he asked Sara Massa if there were any weapons in the house and she told him that there was a shotgun in her room. She also told Officer Berkhart that she had removed the gun the night before from Michael's room.

Count I of plaintiff's amended complaint, directed at Maynard and Sara Massa, alleged that they knew their son Michael possessed numerous guns and other associated equipment which were kept at the family residence. It further alleged that the Massas provided Michael with such guns and associated items, knew or should have known that Michael had previously misused guns in shooting at persons and private property and despite such knowledge they allowed Michael to possess various firearms. The complaint then alleged three specific negligent acts or omissions which constituted the proximate cause of plaintiff's injuries. At the conference on jury instructions, however, plaintiff's counsel agreed that one of the alleged acts of negligence was repetitive and therefore the jury was instructed that the defendants were charged with negligence in one or more of the following respects:

"(A) Negligently and carelessly failed to exercise parental control over their minor child, Michael Lee Massa, in that they allowed him to own or possess firearms or other weapons when they knew, or in the exercise of due care should have known, that such presented [a] hazard to other persons.

(B) Negligently and carelessly provided guns to Michael Massa when they knew, or should have known that he misused guns and presented a hazard to others."

Defendants Maynard and Sara Massa contend that the allegations of plaintiff's complaint, to the extent that they state a legally cognizable cause of action, are based on the theories of negligent parental supervision and negligent entrustment. Defendants argue that neither of these theories of liability is supported by the evidence and therefore the trial court erred in refusing to direct a verdict in their favor.

■ A verdict will be directed only where all of the evidence, when viewed in a light most favorable to the nonmoving party, so favors the movant that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) Our examination of the defendants' liability under plaintiff's alternative theories is therefore based upon the *Pedrick* standard.

■ To prevail on a theory of negligent entrustment the plaintiff must show that the defendants entrusted a dangerous article to another whom they know, or should know, is likely to use it in a manner involving an unreasonable risk of harm to others. (*Teter v. Clemens* (1986), 112 Ill. 2d 252, 257, 492 N.E.2d 1340, 1342, citing 1 J. Dooley, Modern Tort Law §23.01, at 613 (1982).)

> " 'It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.' " *Teter*, 112 Ill. 2d at 257, 492 N.E.2d at 1342, quoting Restatement (Second) of Torts §308, at 100 (1965).

■ From the evidence presented, it is clear that the defendants cannot be liable for negligent entrustment. Michael Massa shot the plaintiff with a stolen handgun which he had purchased one or two weeks prior to the shooting. Michael testified that his parents were unaware of the existence of the pistol. Maynard and Sara Massa also testified that they had no knowledge of Michael's possession of the gun. Clearly, the defendants cannot be liable for negligent entrustment of an article which they did not only not control, but did not even know existed.

■ ■ The plaintiff argues, however, that the evidence supports an inference that Maynard Massa was aware of the existence of the stolen weapons located in Michael's room. Plaintiff is apparently referring to the telephone conversation between Maynard and Sara Massa wherein Maynard told his wife to remove the rifle and shotgun from Michael's closet. While it is true that negligence may be proved by circumstantial evidence, the inferences drawn from that evidence must be reasonable. (*Kosrow v. Acker* (1989), 188 Ill. App. 3d 778, 785, 544 N.E.2d 804, 808.) An inference of negligence cannot be established on the basis of mere speculation. (*Kosrow*, 188 Ill. App. 3d at 785, 544 N.E.2d at 808.) We do not believe that the jury could reasonably infer that Maynard or Sara Massa was aware that

Michael possessed the stolen handgun prior to the October 3, 1981, shooting based upon Maynard Massa's reference, more than one year later, to the rifle and shotgun in Michael's closet. Any such inference would be pure speculation.

■ ■ With regard to the allegation of negligent parental supervision, we note first that the general rule in Illinois is that parents are not liable for the torts of their minor children merely because of the parent-child relationship. (*Basler v. Webb* (1989), 188 Ill. App. 3d 178, 180, 544 N.E.2d 60, 62; *Allstate Insurance Co. v. Pruitt* (1988), 177 Ill. App. 3d 407, 411-12, 532 N.E.2d 401, 404.) Parents may be liable, however, for their negligence in failing to control their children under section 316 of the Restatement (Second) of Torts. (*Basler*, 188 Ill. App. 3d at 180, 544 N.E.2d at 62; *Duncan v. Rzonca* (1985), 133 Ill. App. 3d 184, 200, 478 N.E.2d 603, 613; *Cooper v. Meyer* (1977), 50 Ill. App. 3d 69, 72, 365 N.E.2d 201, 202-03.) Section 316 provides:

"A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent

(a) knows or has reason to know that he has the ability to control his child, and

(b) knows or should know of the necessity and opportunity for exercising such control." Restatement (Second) of Torts §316, at 123-24 (1965).

■ To establish negligence under this section, the plaintiff must show: (1) that the parents were aware of specific instances of prior conduct sufficient to put them on notice that the act complained of was likely to occur (*Kosrow v. Smith* (1987), 162 Ill. App. 3d 120, 124, 514 N.E.2d 1016, 1019; *Pesek v. Discepolo* (1985), 130 Ill. App. 3d 785, 787, 475 N.E.2d 3, 4); and (2) that the parents had the opportunity to control the child (*Campbell v. Haiges* (1987), 152 Ill. App. 3d 246, 250, 504 N.E.2d 200, 203; *Cooper*, 50 Ill. App. 3d at 72, 365 N.E.2d at 203). We find that the evidence in this case, even when viewed most favorably to plaintiff, does not establish either of these elements.

Maynard and Sara Massa were aware that Michael was somehow involved in the BB gun shooting incident in September of 1981. Furthermore, construing the evidence most favorably to the plaintiff, they were told that this was not the first occurrence of this nature. We do not believe that these facts can reasonably be interpreted as putting the Massas on notice that Michael was likely to buy a stolen

gun, commit a burglary, and shoot a police officer while attempting to escape. Moreover, even if we were to deem that the Massas had sufficient notice of Michael's potential to misuse guns, there is simply no evidence of the opportunity to prevent the shooting of Officer Barth. "The duty of a parent is only *to exercise such ability to control his child as he in fact has at the time* when he has the opportunity to exercise it and knows the necessity of so doing." (Emphasis added.) Restatement (Second) of Torts §316, comment *b*, at 124 (1965).

In *Campbell v. Haiges* (1987), 152 Ill. App. 3d 246, 504 N.E.2d 200, the trial court granted summary judgment to the defendant parents of a child who had attacked another child while in the care of a baby-sitter. The plaintiff's complaint alleged, *inter alia*, that the parents knew of the child's tendency for extreme violence, knew that they had the ability to control the child, and knew or should have known of the necessity and opportunity to exercise such control. In affirming the trial court, the appellate court noted that "the simplest answer to plaintiff's complaint is that the [defendant's parents] did not have the ability to control their child because they were both at work at the time of the alleged attack." *Campbell*, 152 Ill. App. 3d at 250, 504 N.E.2d at 203.

In the instant case, it is undisputed that the shooting of Officer Barth did not occur in the presence of or in close proximity to defendants Maynard and Sara Massa. There is nothing to suggest that the Massas knew that when Michael left the house on October 3, 1981, he planned to break into a sporting goods store. Nor was there any evidence from which it could reasonably be inferred that they knew Michael was armed when he left the house that day. Absent some evidence that the Massas knew or should have known of the necessity and opportunity to control Michael's conduct on that day, there can be no liability. (See *Cooper*, 50 Ill. App. 3d at 72, 365 N.E.2d at 203 (complaint against defendant parent was dismissed for failure to state a cause of action because, *inter alia*, the defendant was not at home and had no opportunity to control the conduct of the child at the time of the tort).) Section 316 does not, after all, purport to make parents vicariously liable for raising careless or delinquent children (see Restatement (Second) of Torts §316, Appendix, Reporter's Notes, at 21 (1966) ("There is no 'general responsibility for the rearing of incorrigible children' ")), but instead imposes a duty on parents to exercise that control which they "in fact [have] at the time" (Restatement (Second) of Torts §316, comment *b*, at 124 (1965)). No parental liability exists without notice of a specific type

of harmful conduct and an opportunity to interfere with it. (*Duncan*, 133 Ill. App. 3d at 200, 478 N.E.2d at 613.) We find, therefore, that the trial court erred in denying Maynard and Sara Massa's motion for a directed verdict. In view of our decision, we need not address the Massas' other contentions of error.

We next consider the arguments of defendant Michael Massa that the trial court erred in: (1) directing a verdict in favor of plaintiff and against defendant for negligence and willful and wanton misconduct; (2) allowing the plaintiff to offer rebuttal evidence concerning the amount of money withdrawn from Michael's savings account; and (3) allowing the plaintiff to present testimony of the BB gun shooting incident.

■■ Michael first contends that the trial court should not have directed a verdict on count II of plaintiff's complaint, alleging negligence, because based on the evidence presented the jury could have found that the plaintiff was comparatively negligent or that defendant's conduct was not the proximate cause of plaintiff's injury. Specifically, defendant argues that his testimony that Officer Barth fired first raised a triable issue of plaintiff's negligence, and he further contends that because the bullet fragment recovered from plaintiff's leg was never identified as a .9 millimeter bullet, there is a question of causation. Viewing the evidence in the light most favorable to the defendant (*Pedrick*, 37 Ill. 2d 494, 229 N.E.2d 504), we find that the court correctly directed a verdict in favor of plaintiff on count II.

Defendant argues that under *Tennessee v. Garner* (1985), 471 U.S. 1, 85 L. Ed. 2d 1, 105 S. Ct. 1694, a police officer may not use deadly force to apprehend a burglar unless it is necessary to prevent escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. Thus, according to defendant, the jury could have found that plaintiff fired first, thereby inviting the defendant to return fire and contributing to his own injury. We find the defendant's argument unpersuasive for several reasons. First, *Garner* held that a Tennessee statute authorizing the use of deadly force against an unarmed, nondangerous fleeing suspect was an unconstitutional violation of the fourth amendment's protection against unreasonable seizures. The plaintiff in *Garner* had alleged a violation of his son's constitutional rights when he was killed by a police officer while fleeing the scene of a burglary. Thus *Garner* was not a negligence action and is inapposite to the facts of this case. Furthermore, the majority in *Garner* acknowledged that an "armed burglar would present a different situation." (*Garner*, 471 U.S. at 22, 85 L. Ed. 2d at 16, 105

S. Ct. at 1706.) It is undisputed that Michael Massa was armed with a .9 millimeter handgun.

Second, there is no evidence that the actions of Officer Barth, if he did indeed fire first, somehow contributed to his injuries. Defendant does not contend that he was startled by the shots, causing him to lose control of his weapon and resulting in the accidental shooting of the plaintiff.

Finally, we find untenable defendant's argument that by shooting first Officer Barth "invited" him to return fire and thereby contributed to his injuries. Defendant has cited no authority, and we are aware of none, for the proposition that a police officer is contributorily negligent for the injuries he receives when engaging in a gun battle with a suspect.

With regard to the question of proximate cause, we find the defendant's contention without merit. The plaintiff testified that he saw the fleeing suspect lower the gun over his arm and shoot in his direction. The other suspect did not fire a weapon. Plaintiff stated that he was hit in the leg by the second shot and then he heard a third shot as he fell. Two bullets were recovered at the scene and a third was removed from the officer's leg. It is undisputed that the defendant's gun discharged while he was fleeing the scene of the burglary. There is no question that the defendant's conduct was the proximate cause of the plaintiff's injuries.

Defendant also contends that the trial court should not have directed a verdict on count III, alleging willful and wanton misconduct, because: (1) there was evidence that the defendant did not intentionally fire his weapon; (2) the defendant was a minor and should not be held to the same standard of care as an adult; and (3) the question of proximate cause should have been decided by the jury. We note parenthetically that the defendant does not contend that it was inconsistent for the trial court to find that his conduct was both negligent and willful and wanton (cf. Hough v. Mooningham (1986), 139 Ill. App. 3d 1018, 487 N.E.2d 1281) and we therefore do not consider that question. In any event, negligence and willful misconduct are not necessarily mutually exclusive. Churchill v. Norfolk & Western Ry. Co. (1978), 73 Ill. 2d 127, 146, 383 N.E.2d 929, 937.

The defendant argues that the trial court should not have directed a verdict against him for willful and wanton misconduct because he testified that he did not aim at plaintiff and did not intend to shoot him. Furthermore, defendant contends that his testimony showed that he did not intentionally fire his weapon, but instead that while running away he "jerked and the gun started firing."

 Conduct need not be intentional to be willful and wanton; it is sufficient if the act was " 'committed under circumstances exhibiting a reckless disregard for the safety of others' " (*Landers v. School District No. 203* (1978), 66 Ill. App. 3d 78, 82, 383 N.E.2d 645, 647, quoting *Hocking v. Rehnquist* (1969), 44 Ill. 2d 196, 201, 254 N.E.2d 515, 518). Notwithstanding the defendant's testimony, we find that the trial court correctly directed a verdict for willful and wanton misconduct. It is simply inconceivable that defendant, while running *away* from Officer Barth, could have unintentionally brought his weapon to bear on the plaintiff and then unwittingly fired *three times*, with one bullet striking the plaintiff, a second striking his police car, and the third landing in a building next to the burglarized premises. The inherent improbability of such an occurrence without an intentional or reckless act on defendant's part, coupled with the plaintiff's testimony that the defendant lowered the gun over his arm and fired directly at him, was such that no reasonable jury could have found for defendant. It has been held that pointing a loaded gun at another is such a gross deviation from the standard of care that it constitutes recklessness. (*People v. Bauman* (1975), 34 Ill. App. 3d 582, 589, 340 N.E.2d 178, 183.) We believe that carrying a loaded pistol while fleeing the scene of a crime and allowing it to discharge three times while it is pointing in the direction of one's pursuers establishes, at a minimum, reckless disregard for the safety of others. Moreover, we find that the fact that the defendant was 15 years old at the time of the shooting does not require a different result. Defendant's conduct was far below the degree of care that a reasonably careful 15-year-old with defendant's mental capacity and experience and knowledge of firearms would use under the circumstances. With regard to defendant's argument concerning proximate cause, the evidence, as related in our discussion of the negligence count above, was such that no triable issue was presented. We find that the trial court did not err in directing a verdict in favor of the plaintiff on count III of the complaint.

Defendant Michael Massa next contends that the trial court erred in allowing the plaintiff to offer rebuttal evidence regarding the amount of funds withdrawn from defendant's savings account. During cross-examination by the plaintiff in the plaintiff's case in chief, Michael testified that he paid about $200 or $230 for the stolen weapons. During Maynard and Sara Massa's case in chief, testimony was elicited about Michael's savings account and that he withdrew about $100 to pay for the stolen guns. On cross-examination by plaintiff's counsel, Michael stated that he thought he bought the guns

about one week prior to the shooting. He also stated that while he did recall making a withdrawal from his savings account, he didn't remember the amount of his initial payment for the guns, although he assumed it was about $100. After Michael presented his case in chief court was recessed. The next day, over counsel's objection, the plaintiff introduced Michael's savings account statement as rebuttal evidence. The statement showed that there was a withdrawal from the account on September 2, 1981, of $60 and another on September 21 of about $57. No other withdrawals were made in September or October. Defendant argues that the bank statement does not address a material issue, and does not explain, repel, contradict or disprove any evidence introduced by him. Defendant contends that if the bank statement was offered to contradict his testimony concerning withdrawals of money, which he made during his parents' case in chief, then it should have been presented prior to Michael's putting on his own case.

■■■ ■ Rebuttal evidence is used to answer, explain, repel, contradict or disprove evidence introduced by the defendant. (*Gabrenas v. R.D. Werner Co.* (1983), 116 Ill. App. 3d 276, 283, 451 N.E.2d 1307, 1312; *Brown v. Sexner* (1980), 85 Ill. App. 3d 139, 149, 405 N.E.2d 1082, 1090.) The admission of rebuttal evidence is left to the discretion of the trial court, and its decision will not be disturbed on review unless an abuse of discretion is shown. (*Gabrenas*, 116 Ill. App. 3d at 284, 451 N.E.2d at 1312.) Moreover, the order in which evidence is presented is also a matter of the trial court's discretion (*Fedt v. Oak Lawn Lodge, Inc.* (1985), 132 Ill. App. 3d 1061, 1068, 478 N.E.2d 469, 475; *Savitch v. Allman* (1977), 52 Ill. App. 3d 884, 888, 368 N.E.2d 224, 227), and an abuse of discretion is likely to occur only when a party is prevented from impeaching witnesses, supporting the credibility of impeached witnesses, or responding to new points raised by the opponent (*Fedt*, 132 Ill. App. 3d at 1068, 478 N.E.2d at 475).

■■■ The bank statement was offered to refute Michael's testimony that he had withdrawn $100 from his bank account to pay for the stolen weapons. Plaintiff was attempting to disprove Michael's testimony that he paid for the guns with his own money and apparently hoped to raise an inference that the money may have come from another source, presumably Michael's father or mother. We do not find this to be improper rebuttal evidence, nor did the trial court abuse its discretion in allowing it following Michael's case in chief. While it may have been more properly presented following Maynard and Sara Massa's case in chief, we discern no prejudice to defendant

in allowing it later, particularly since this evidence was introduced after the court had granted plaintiff's motion for a directed verdict against Michael. Furthermore, defense counsel was given the opportunity to question Michael about the bank statement and elicited his explanation that he had withdrawn the money a couple of weeks before purchasing the guns. We find no error.

■ Defendant's final contention is that the trial court erred in allowing the plaintiff to present hearsay testimony of the BB gun shooting incident. Defendant acknowledges that the trial court allowed the testimony for the limited purpose of showing that defendants Maynard and Sara Massa had notice of Michael's misuse of guns. Out-of-court statements that are offered for an independent purpose rather than to establish the truth of the matter asserted are not hearsay. (*Thornton v. University Civil Service Merit Board* (1987), 154 Ill. App. 3d 1016, 1021, 507 N.E.2d 1262, 1266; *Smith v. Solfest* (1978), 65 Ill. App. 3d 779, 783, 382 N.E.2d 831, 834.) Nevertheless, defendant argues that the testimony did not establish notice because the evidence showed that Paul Black, not Michael Massa, shot the BB's.

■ Whether or not the evidence established that Paul Black rather than Michael shot the boys does not affect the admissibility of the evidence. The testimony was admitted to show that Michael's parents were told that he was involved in the incident. While the level of Michael's actual participation in the incident would certainly affect the weight accorded to such evidence, there was no error in allowing the jury to consider it.

For the above-stated reasons, we reverse the judgment against defendants Maynard and Sara Massa and affirm the judgment against defendant Michael Massa.

Affirmed in part and reversed in part.

WELCH and HOWERTON, JJ., concur.