ROGER LOTT *et al.*, both Indiv. and as Next Friend on Behalf of Kyle Lott, a Minor, Plaintiffs-Appellants, v. WILLIAM STRANG, as Special Adm'r for William C. Seehausen, Deceased, Defendants (Wayne Seehausen *et al.*, Defendants-Appellees).

Fourth District    No. 4—99—0771

Argued February 23, 2000.—Opinion filed March 31, 2000.

COOK, P.J., dissenting.

John W. Guntren (argued), of Jerseyville, for appellants.

George P. Wittman (argued), of Wittman & Kirbach, P.C., of Jerseyville, for appellees.

JUSTICE STEIGMANN delivered the opinion of the court:

In September 1998, plaintiffs, Roger and Jean Lott, sued defendants Wayne and Bonnie Seehausen and the estate of their son, William Seehausen, an unemancipated minor, for damages resulting from an automobile collision. The Lotts alleged that William's negligence caused the collision. In counts IV, V, and VI of their complaint, the Lotts further alleged that Wayne and Bonnie's negligent supervision of William was a proximate cause of their injuries. The trial court struck those allegations and dismissed the Lotts' common-law claims against Wayne and Bonnie, pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 1998)). The Lotts bring this interlocutory appeal, arguing that their complaint states a cause of action against Wayne and Bonnie. We affirm.

## I. BACKGROUND

In September 1996, William was driving eastward on Route 16 in Jersey County. At the same time, Jean Lott and her son, Kyle, were traveling west on Route 16. William's car crossed the centerline and collided head-on with the Lotts' vehicle. As a result, William died, and Jean and Kyle were injured. The Lotts allege that William was intoxicated when the accident occurred.

In September 1998, the Lotts filed a multicount complaint against William's estate, Wayne, and Bonnie. In counts IV through VI of their complaint, the Lotts alleged that (1) Wayne and Bonnie had a duty to supervise William so as to prevent him from doing harm to others, and (2) they breached that duty. Specifically, the Lotts alleged that Wayne and Bonnie knew that William had previously been at fault in an automobile accident in which he struck a Jersey County deputy sheriff, and yet they failed to take appropriate steps to prevent William from again harming others. In April 1999, they amended counts IV through VI to add that Wayne and Bonnie had the opportunity to control William by (1) taking away his car keys, (2) taking away his driving privileges, and (3) not letting him drive unless they were with him to supervise.

In May 1999, Wayne and Bonnie filed a motion to dismiss counts IV through VI pursuant to section 2—615 of the Code. In that motion, Wayne and Bonnie admitted that William was involved in an accident in October 1995 in which he struck a Jersey County sheriff's car.

In July 1999, the trial court granted Wayne and Bonnie's motion and struck counts IV, V, and VI of the Lotts' complaint, thereby dismissing the Lotts' common-law claims against Wayne and Bonnie. The trial court entered a finding that no just reason existed for delaying enforcement or appeal of its order (155 Ill. 2d R. 304(a)), and this appeal followed.

## II. ANALYSIS

### A. Standard of Review

■ In *Vernon v. Schuster*, 179 Ill. 2d 338, 344, 688 N.E.2d 1172, 1175 (1997), the supreme court addressed the standard of review for cases dismissed pursuant to section 2—615 of the Code and wrote the following:

> "The question presented by a section 2—615 motion to dismiss is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. [Citations.] A cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. [Citation.]
>
> *** Since ruling on a motion to dismiss does not require a court to weigh facts or determine credibility, we review the complaint *de novo*."

### B. Parental Liability

■ Parents in Illinois are not liable for the torts of their minor children merely because of the parent-child relationship. *Bishop v.*

*Morich,* 250 Ill. App. 3d 366, 370, 621 N.E.2d 43, 46 (1993). Parents may be liable, however, if they failed to adequately control or supervise their children pursuant to section 316 of the Restatement (Second) of Torts (hereinafter Restatement) (Restatement (Second) of Torts § 316, at 123-24 (1965)), which states as follows:

> "A parent is under a duty to exercise reasonable care so [as] to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
>> (a) knows or has reason to know that he has the ability to control his child, and
>> (b) knows or should know of the necessity and opportunity for exercising such control."

See also *Duncan v. Rzonca,* 133 Ill. App. 3d 184, 200, 478 N.E.2d 603, 613 (1985).

■ To establish negligent parental supervision, a plaintiff must show that (1) the parents were aware of specific instances of prior conduct sufficient to put them on notice that the act complained of was likely to occur, and (2) the parents had the opportunity to control the child. *Bishop,* 250 Ill. App. 3d at 370, 621 N.E.2d at 46.

## C. The Lotts' Complaint

■ The Lotts contend that their complaint states a cause of action because, with the knowledge of William's prior accident, Wayne and Bonnie had (1) a duty to prevent him from harming others in the same way, and (2) the opportunity to do so by restricting William's use of the car. We are not persuaded.

Simply put, knowing that their son had a car accident one year earlier did not constitute knowledge of prior conduct sufficient to put Wayne and Bonnie on notice that William's collision with the Lotts was likely to occur. To hold otherwise would impose a duty on Illinois parents far greater than that defined by section 316 of the Restatement and far greater than sound public policy permits.

Section 316 imposes a duty on parents when they are in a position to exercise immediate control over their children to prevent some foreseeable harm. It does not impose a duty on parents to take precautionary disciplinary measures or to regulate their children's behavior on an ongoing basis. As comment *b* to section 316 explains: "The duty of a parent is only to exercise such ability to control his child as he in fact has at the time when he [(1)] has the opportunity to exercise it and [(2)] knows the necessity of so doing." Restatement § 316, Comment *b,* at 124 (1965).

The Lotts do not allege that specific circumstances arose which presented an opportunity for Wayne and Bonnie to intervene and

prevent their injury. Rather, their complaint alleges that the accident would not have happened if Wayne and Bonnie had properly disciplined William and regulated his conduct on a long-term, ongoing basis. Section 316 does not impose liability for such broadly defined omissions.

The following illustration clarifies the type of circumstances under which section 316 is intended to come into play:

> "A is informed that his six-year-old child is shooting at a target in the street with a .22 rifle, in a manner which endangers the safety of those using the street. A fails to take the rifle away from the child, or to take any other action. The child unintentionally shoots B, a pedestrian, in the leg. A is subject to liability to B." Restatement § 316, Illustration, at 124 (1965).

In the scenario presented above, the parent can step in and stop the child from causing harm. However, section 316 does not impose a duty on parents to prevent their children from ever entering into a situation where they might commit a negligent act. See *Pesek v. Discepolo*, 130 Ill. App. 3d 785, 787, 475 N.E.2d 3, 4-5 (1985) (although the parents knew of their 15-year-old son's propensity for criminal and quasi-criminal behavior, they could not reasonably foresee that he would commit rape); *Barth v. Massa*, 201 Ill. App. 3d 19, 28-29, 558 N.E.2d 528, 534 (1990) (knowing their son had a propensity to misuse guns did not put parents on notice that he would buy a stolen gun, commit a burglary, and shoot a police officer).

The Lotts argue that their case is analogous to *Duncan v. Rzonca*, 133 Ill. App. 3d 184, 478 N.E.2d 603 (1985), in which the Second District Appellate Court held that the plaintiff sufficiently stated a negligent-supervision claim. In that case, the defendant worked at a bank and her desk was equipped with a silent alarm button. On one occasion, the defendant's three-year-old son pushed the alarm button and the police responded to the alarm. Six days later, when the defendant's son was at work with her again, another bank employee told her that the last time the boy was there he had set off the alarm. The employee instructed the defendant to keep the boy away from the button. Later that day, the boy pushed the button and the plaintiff, a police officer, was injured while responding to the alarm. *Duncan*, 133 Ill. App. 3d at 187-88, 478 N.E.2d at 605. The reviewing court held that the plaintiff stated a claim because the defendant (1) knew of the need to control the boy, and (2) had the opportunity to do so. *Duncan*, 133 Ill. App. 3d at 200, 478 N.E.2d at 613.

The circumstances present in *Duncan* are far more analogous to those described in the illustration from the Restatement than they are to those present here. The parent in *Duncan* knew of the need to control her son in identical circumstances to those that existed the

first time he triggered the alarm, just six days earlier. In addition, the mother was in the immediate vicinity of the child and the button when the incident occurred. *Duncan* does not stand for the proposition that parents have a legal duty to take the car keys away from any child who has ever been involved in an accident.

We hold that even if the allegations contained in the Lotts' complaint are taken as true, it fails to state a cause of action. Wayne and Bonnie's knowledge of William's prior accident did not give rise to a duty pursuant to section 316 of the Restatement.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH, J., concurs.

PRESIDING JUSTICE COOK, dissenting:

I respectfully dissent. I would reverse the decision of the trial court and direct defendant to answer counts IV, V, and VI.

The majority recites the rule to be applied in this case but then ignores it. " 'A cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover.' " 312 Ill. App. 3d at 523, quoting *Vernon*, 179 Ill. 2d at 344, 688 N.E.2d at 1175. It is certainly possible that plaintiff could prove the following facts in this case: (1) at the time of the accident William Seehausen was an unemancipated minor, living with his parents, on whom he was dependent for support; (2) the automobile William was driving was purchased for him with the assistance of his parents and was garaged at their home; (3) William's parents knew of his poor driving habits and knew of his inclination to drive after consuming alcohol; and (4) notwithstanding these facts, William's parents placed no restrictions on his driving. Recovery would be possible under these facts. *Zedella v. Gibson*, 165 Ill. 2d 181, 650 N.E.2d 1000 (1995).

In *Zedella*, the supreme court affirmed the dismissal of a negligent-entrustment action against the driver's father, but stressed that the father neither gave nor sold the car to his son, the father never had possession of the vehicle, the son made his own insurance payments, the son was an emancipated 23-year-old adult, had a residence away from home at Southern Illinois University where the vehicle was located (the father lived in Wisconsin), and provided some means of support for himself. *Zedella*, 165 Ill. 2d at 189-92, 650 N.E.2d at 1004-06.

It is a mistake to enforce the rigors of common-law pleading in the 21st century. "Pleadings shall be liberally construed with a view to doing substantial justice between the parties." 735 ILCS 5/2—603(c) (West 1998). "Today the function of informing an opponent of one's position is largely accomplished through discovery, a function that was largely fulfilled by the pleadings at an earlier time." 3 R. Michael, Illinois Practice § 23.1, at 300 (1989) (Civil Procedure Before Trial). Motions to dismiss are useful to weed out, at an early stage, cases where it is clearly apparent that no set of facts can be proved that will entitle a plaintiff to recovery. *Wright v. City of Danville*, 174 Ill. 2d 391, 398, 675 N.E.2d 110, 115 (1996). Meritless litigation should be brought to a conclusion as soon as possible, but where merit is dependent upon the facts, a motion for summary judgment and not a motion to dismiss is the procedure that must be employed. *Yuretich v. Sole*, 259 Ill. App. 3d 311, 314, 631 N.E.2d 767, 770 (1994). Especially where the facts are exclusively within the knowledge of the opponent, it may be error to deny discovery before ruling on a motion to dismiss. *Yuretich*, 259 Ill. App. 3d at 317, 631 N.E.2d at 772; *Winfrey v. Chicago Park District*, 274 Ill. App. 3d 939, 949, 654 N.E.2d 508, 516 (1995).

It is interesting to compare the approach taken in *Zedella* with the approach taken here. In *Zedella*, the parties took discovery, and defendant's motion was filed under section 2—619, where the court considers pleadings, depositions, and affidavits. *Zedella*, 165 Ill. 2d at 185-86, 650 N.E.2d at 1002. The court was very familiar with the potential evidence in *Zedella*. In the present case, by contrast, no discovery was taken, and we are almost completely ignorant of the potential evidence. At oral argument, the attorneys were uncertain how old William was, although they believed him to be in high school. The attorneys believed title to the car was in William's name and that he had a separate insurance policy with his parent's insurer, but they did not know whether the parents had purchased the car and paid for the insurance. The attorneys did not know whether the parents had taken any steps to restrict William's driving privileges.

The argument is made that no case in Illinois has ever imposed liability in this situation. The reason for that supposed dearth of cases is that the standard automobile policy covers those driving the automobile with the express or implied permission of the insured and covers related individuals resident of the same household. See 625 ILCS 5/7—317(a), (b) (West 1998); 215 ILCS 5/143.13(a) (West 1998). It is usually unnecessary to plead negligent entrustment or agency or some other theory to reach the parent's insurance policy; the child is insured under that policy in any case. It is only in unusual situations, *e.g.*, where the child is not a resident of the household, that such

pleadings are required. That was the situation in *Zedella*. In the present case, we are told that the car was titled in the name of the child and the child had a separate insurance policy. It would be interesting to know why that was done. Car dealers and insurance companies are usually reluctant to deal with minors, who have the right to disaffirm their contracts. Separate policies for parents and an unemancipated child raise the question whether those policies "stack," particularly where the child's negligence caused the accident and the parents committed a separate act of negligence in allowing the child to drive the car.

The fact that the car was titled in the child does not bar a cause of action for negligent entrustment. *Zedella*, 165 Ill. 2d at 188-92, 650 N.E.2d at 1004-05, citing *Golembe v. Blumberg*, 262 A.D. 759, 27 N.Y.S.2d 692 (1941) (father gave car to adult son); *Vince v. Wilson*, 151 Vt. 425, 561 A.2d 103 (1989) (grandaunt funded purchase of car for grandnephew); *McCart v. Muir*, 230 Kan. 618, 641 P.2d 384 (1982) (co-owner father negligently entrusted vehicle to minor son).

The majority provides an extensive discussion of parental liability and section 316 of the Restatement. The cases the majority cites that refuse to impose parental liability are, however, very different from the present case. *Pesek* involved a child who committed rape. *Barth* involved a child who bought a stolen gun, committed a burglary, and shot a police officer. *Duncan*, where liability was imposed, involved a child who set off a bank alarm and, six days later, did the same thing again. The majority may be correct that parental liability should not be imposed in those situations. Parents clearly have a responsibility, however, to supervise their children as those children are beginning to drive motor vehicles. For that reason, most automobile insurance policies provide coverage for children without questioning the particular situation. The majority's message, that parents do not need to concern themselves with their children's driving habits, is a startling one, one that is contrary to logic and policy. It may be that the facts would disclose these parents did everything they could have to prevent this accident. The majority, however, is not interested in any facts.

Sometimes we see trial courts stretch to dismiss a case where it is unlikely that plaintiff will be able to recover. See *Yuretich*, 259 Ill. App. 3d at 314, 631 N.E.2d at 770. Sometimes it is tempting to dismiss a case at an early stage to prevent expenditure of attorney fees, congestion of the courts, and unnecessary stress of litigation. This is not a case where expenditures will be prevented. This case comes to us on a Rule 304(a) finding. If the majority's decision stands, the parties will return to the trial court, where they will take discovery on the remaining counts. If that discovery turns up evidence that the parents were

at fault, will the majority's decision prevent parental responsibility counts from being refiled? In my view, it would not.