SECOND DIVISION

No. 1-10-0568

| | | |
|---|---|---|
| HYE RA HAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 04 L 7997 |
| | ) | |
| WILLIAM HOLLOWAY, | ) | Honorable |
| | ) | Richard J. Elrod, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Cunningham and Justice Karnezis concurred in the judgment.

## OPINION

Plaintiff Hye Ra Han sued defendant William Holloway for negligence, alleging personal injuries arising from a 2002 motor vehicle accident in Chicago. In 2009, following a jury trial, the circuit court of Cook County entered judgment in favor of defendant, in accordance with the jury's verdict. Plaintiff filed a posttrial motion for a new trial, which the court denied. For the reasons set forth below, we affirm.

## JURISDICTION

The trial court denied plaintiff's motion for a new trial on January 29, 2010, and plaintiff timely filed her notice of appeal on February 24, 2010. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 303 (eff. May 30, 2008).

## BACKGROUND

At trial,[1] defendant testified that on July 22, 2002, immediately prior to the accident, plaintiff was the driver of a vehicle stopped behind approximately five other cars for a red light westbound on North Avenue at Halsted. Defendant's vehicle was stopped behind plaintiff's vehicle at the red light. When the light turned green, the cars in front of plaintiff's vehicle proceeded to cross through the intersection of Halsted, and plaintiff's vehicle also began to move forward toward the intersection. Defendant likewise began slowly moving forward, but then saw plaintiff's brake lights come on, and she stopped suddenly in front of him, about a car length before the intersection. Defendant applied his brakes and honked his horn. He saw no pedestrian or anything else in front of her vehicle. Defendant estimated he was traveling about one or two miles per hour when the front of his car made contact with the rear of plaintiff's vehicle. Defendant stated he thought his license plate scratched plaintiff's rear bumper. Beyond the scratch on plaintiff's bumper, there was no other noticeable damage to either vehicle.

Both vehicles were driveable, and the parties agreed to drive to the nearest police station to file a police report. According to defendant, both he and plaintiff spoke to the officer at the desk. The police asked plaintiff if she was okay, and she answered "yes." After speaking to the police, defendant and plaintiff left the station, got in their respective vehicles and left.[2]

The evidence presented at trial also included testimony, by evidence deposition, of two of

[1]Plaintiff's testimony at trial is not included in the record in this case.

[2]The police report prepared for this accident, which is included in the record, shows a check mark in the box labeled "No Injury/Drive Away."

2

plaintiff's treating physicians, Dr. Roberto Diaz and Dr. James Robert Diesfeld, and Dr. Russell Glantz, one of defendant's retained expert witnesses. Dr. Diaz opined, to a reasonable degree of medical certainty, that plaintiff suffered a lumbar spine sprain/strain, a bulging disk, and an annular tear in her spine as a result of the accident. Similarly, Dr. Diesfeld opined, to a reasonable degree of medical certainty, that plaintiff suffered a diffuse disk bulge and annular tear caused by the accident. Defendant's expert, Dr. Glantz, agreed that plaintiff suffered "a soft tissue injury, which is also known as a sprain or strain to the lower lumbar area," caused by the accident. However, he added that, consistent with Dr. Diaz's report of his examination of plaintiff on September 13, 2002, any lumbar sprain/strain plaintiff might have sustained in the July 22 accident was basically completely resolved as of September 13. With regard to the annular tear, Dr. Glantz opined, to a reasonable degree of medical certainty, that even if there was an annular tear, it was "unlikely that that occurred at the time of the motor vehicle accident."[3]

On October 16, 2009, the jury returned a verdict in favor of defendant and against plaintiff, and the trial court entered judgment for defendant. The court subsequently denied plaintiff's posttrial motion for a new trial.

Additional relevant details of Dr. Glantz's trial testimony will be discussed in the context of individual issues raised on appeal.

ANALYSIS

Plaintiff argues the trial court erred in denying her posttrial motion for a new trial.

---

[3]According to Dr. Glantz's report, which is included in defendant's Illinois Supreme Court Rule 213(f) (eff. Jan. 1, 2007) disclosures, plaintiff's first medical treatment following the accident was eight days later, when she saw a chiropractor.

1-10-0568

According to plaintiff, the jury's verdict in favor of defendant and against plaintiff was "clearly contrary to the manifest weight of the evidence."

The standard for determining whether a trial court erred in denying a motion for a new trial is whether the jury's verdict was against the manifest weight of the evidence. *Maple v. Gustafson*, 151 Ill. 2d 445, 455 (1992). A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary, and not based upon any of the evidence. *Id.* at 454. A trial court's ruling on a motion for a new trial will not be reversed except in those instances where it is affirmatively shown that it clearly abused its discretion. *Id.* at 455.

The appellant has the burden to present a sufficiently complete record to support a claim of error on appeal. *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001) (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). Indeed, "[f]rom the very nature of an appeal it is evident that the court of review must have before it the record to review in order to determine whether there was the error claimed by the appellant." *Foutch*, 99 Ill. 2d at 391. Where the issue on appeal relates to the conduct of a hearing or proceeding, this issue is not subject to review absent a report or record of the proceeding. *Webster*, 195 Ill. 2d at 432. Without such a record, it is presumed that the order entered by the trial court is in conformity with the law and has a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392; *Webster*, 195 Ill. 2d at 432. "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch*, 99 Ill. 2d at 392.

In *Foutch*, the defendants' motion to vacate judgment was denied by the trial court. Defendants failed to present a complete record of the hearing on review. The appellate court

4

affirmed the decision of the trial court, and our supreme court affirmed. The supreme court stated: "As there is no transcript of the hearing on the motion to vacate here, there is no basis for holding that the trial court abused discretion in denying the motion." *Foutch*, 99 Ill. 2d at 392.

Here, as noted, plaintiff's testimony at trial is not included in the record on appeal. The importance of this testimony is underscored by plaintiff's repeated references to it in her brief, but without proper citation to the record.[4] Plaintiff thus argues the jury's verdict was against the manifest weight of the evidence, but she fails to include in the record all of the relevant evidence that was actually presented to the jury. Without a transcript of plaintiff's trial testimony, there is no adequate basis for concluding the trial court abused its discretion in denying plaintiff's motion for a new trial. See *Foutch*, 99 Ill. 2d at 392. In this situation, we presume the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *Id.* Any doubts arising from the incompleteness of the record are resolved against plaintiff, the appellant in this case. *Id.*

Plaintiff next argues the trial court erred in denying her motion for a directed verdict. As plaintiff correctly notes, a motion for a directed verdict is properly granted only where all of the evidence, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967). Plaintiff emphasizes that, when faced with this issue, a reviewing court

---

[4]Plaintiff also failed to include in the record any of what defendant describes as "the court reported transcripts from the hearing on plaintiff's motion for a new trial," which, according to defendant, "would have contained [the judge's] detailed explanations for all of his rulings in this case."

"must consider all of the evidence."

The difficulty here is that, without a transcript of plaintiff's trial testimony, we are prevented from considering "all the evidence." We do not know, for example, if plaintiff testified as to how the accident occurred, or whether, as plaintiff contends in her brief, her version differed from defendant's; nor do we know in what ways the two versions might have differed.[5] "Where the issue on appeal relates to the conduct of a hearing or proceeding, this issue is not subject to review absent a report or record of the proceeding." *Webster*, 195 Ill. 2d at 432. Here again, absent a transcript of plaintiff's trial testimony, we presume the order entered by the trial court denying the motion for directed verdict was in conformity with the law and had a sufficient factual basis. See *Foutch*, 99 Ill. 2d at 392. Any doubts arising from the incompleteness of the record are resolved against plaintiff. *Id.*

Plaintiff next advances a series of arguments regarding "errors in certain rulings" of the trial court. Plaintiff first argues the trial court erred in allowing Dr. Glantz to rely, in his testimony, on a portion of the police report in this case. The police report, which was prepared shortly after the accident, shows a check mark in the box labeled "No Injury/Drive Away." Dr. Glantz relied, in part, on this portion of the police report in formulating his opinions regarding plaintiff's alleged injuries. At trial, the following colloquy occurred between defense counsel and Dr. Glantz:

---

[5]Plaintiff also failed to include in the record what defendant describes as "the court reported transcript of the proceedings wherein the arguments for and against the motion for a directed verdict were made and the bases upon which [the judge] properly denied the motion for a directed verdict [were presented]."

"Q. Doctor, *** in terms of rendering your expert opinions in this case as well as others in terms of what injuries, if any, were sustained in a car accident, is it part of your custom and practice to review information that would be contained in a police report from the traumatic event, the motor vehicle accident?

A. Yes.

Q. And you reviewed the police report in this particular case, correct?

A. Yes.

Q. And you're using that as one piece of the puzzle, so to speak, one part in basing your opinions of what injuries, if any, Ms. Han sustained in this accident, correct?

A. Yes, just one part.

Q. And from reviewing the police report, did you note if any injuries were reported by Ms. Han in this case?

A. There were none.

* * *

Q. And what's the significance *** if any, of the fact that no injury was reported at the scene of the accident to the police by Ms. Han, what's the significance of that in terms of rendering your opinions about what injuries she suffered in this case?

7

MR. BASILE (plaintiff's counsel): Same objection, ask that the testimony be stricken.[6]

BY THE WITNESS:

A. Well, the significance is – and it's just one piece of information. If somebody has a significant injury at the time of an accident, more likely than not they will be complaining of something immediately and will require emergency room treatment. However, that doesn't absolutely mean that because they didn't complain of anything initially that they couldn't have had a muscle sprain because sometimes a muscle sprain becomes more painful six, ten hours later. So it doesn't absolutely rule things out, but it suggests that a significant injury did not occur. If you *** blow out a disk at the time of a motor vehicle accident, you will be having pain immediately, not even a few hours later."

Initially, plaintiff appears to argue that, in allowing such testimony, the trial court improperly admitted a portion of the police report into evidence. However, as defendant correctly notes, the police report in this case was never admitted into evidence.

Plaintiff next contends Dr. Glantz's testimony is untrue. Citing her own testimony at trial, plaintiff asserts she never told the police she was not injured. Here again, because plaintiff's trial testimony is not included in the record, there is no proper citation to the record in support of this alleged testimony. Without a transcript of this testimony, we do not know if plaintiff testified, as

---

[6]The trial court overruled this objection.

she asserts in her brief, that she never spoke to the police but that defendant did.

Plaintiff also points to *Wilson v. Clark*, 84 Ill. 2d 186 (1981), which adopted Federal Rule of Evidence 703. Federal Rule 703 provides that the facts or data upon which an expert bases an opinion need not be admissible in evidence "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703 (quoted in *Wilson*, 84 Ill. 2d at 193). Citing *Dugan v. Weber*, 175 Ill. App. 3d 1088 (1988), and *People v. Ward*, 61 Ill. 2d 559 (1975), as well as *Wilson*, plaintiff argues that this Rule 703 language, when applied to physicians, refers only to reports made and utilized during the course of the physician's *medical practice*, and not reports formed for litigation purposes. Plaintiff asserts that Dr. Glantz, a neurologist, would not utilize or rely on police reports as part of his medical practice, and it was thus error to allow him to rely on the police report in his testimony in this case.

We do not interpret Rule 703, as adopted by *Wilson*, so narrowly. Instead, we agree with the trial court that the testimony in question here was allowable under Illinois Pattern Jury Instructions, Civil, No. 2.04 (2005) (hereinafter, IPI Civil (2005) No. 2.04), which is based, in part, on *Wilson*, and which was given to the jury in this case. In instructing the jury pursuant to IPI Civil (2005) No. 2.04, the judge stated:

> "I have allowed witnesses to testify in part to records that have not been admitted in evidence. This testimony was allowed for a limited purpose. It was allowed so that the witness may tell you what he relied on to form his opinions. The material being referred to is not evidence in this case and may not be considered by you as evidence. You may consider the material

for the purpose of deciding what weight, if any, you will give the opinions

testified to by the witnesses."

Plaintiff next argues the trial court erred in allowing Dr. Glantz to rely on photographs of the two vehicles in opining that because there was minimal damage to the vehicles, there was minimal force, and therefore less likelihood of significant injury. Plaintiff points to the following colloquy between defense counsel and Dr. Glantz:

"Q. One of the other things you looked at were the photographs of

the two vehicles involved in this case; is that right?

A. Yes.

MR. BASILE (plaintiff's counsel): Same objection as before, move

to strike any testimony regarding photographs pursuant to a motion *in*

*limine*.[7]

BY MR. KOPPELMAN (defendant's counsel):

Q. Now, can you tell the ladies and gentlemen of the jury as to why

you found the photographs in this particular case to be significant in

rendering your opinions?

A. Well, the photographs are significant in that the photo depicting

[plaintiff's] automobile shows minimal damage. All I can see is a small

scratch on her bumper, and the photo depicting the other car that

apparently struck the rear part of [plaintiff's car] doesn't show any

---

[7]This objection and the one following it were both overruled by the trial court.

damage. So I find that significant in that the amount of force that was generated at the time of the accident was minimal.

Q. And the fact that there was minimal force, if any, sustained to both of the vehicles involved, how did you use that in terms of rendering your overall opinion as it relates to your view of the entire case?

MR. BASILE: Objection as to foundation, qualification of this witness. Move *** to strike all testimony regarding this.

BY THE WITNESS:

A. Well, it helps me in part. I've obviously reviewed all of the other medical details, but in addition to those medical details, that also tells me that with minimal accidental injury to the motor vehicle and therefore minimal force it's not likely that there was any significant injury that was suffered to an individual with minimal force of that kind."

Plaintiff argues there was no indication that Dr. Glantz had the education, training, experience, knowledge, or qualifications to opine that, based on the minimal damage shown in photographs[8] of the vehicles, the force of impact was minimal and the likelihood of significant injury therefore was low.

In *Fronabarger v. Burns*, 385 Ill. App. 3d 560 (2008), the court rejected a similar argument in a case involving a traffic accident where the plaintiff complained of lower-back pain

---

[8]The photographs of the vehicles were introduced into evidence by plaintiff during her case in chief.

after her vehicle was rear-ended by the defendant's vehicle. The defendant's expert witness, a board certified neurologist with experience treating auto accident patients, relied in part on photos of the vehicles in forming an opinion of the injuries sustained by the plaintiff in the accident. The neurologist testified that the photos were significant because they showed no damage, and the photos were evidence of the amount of force, if any, sustained in the car accident. The neurologist stated: "[I]f the vehicle doesn't sustain any evidence of an impact, then it's not likely that the people in the vehicle are going to have significant evidence of an impact." (Internal quotation marks omitted.) *Id*. at 563. The court held the neurologist could rely in part on the photographs in forming her opinion regarding plaintiff's injuries. In reaching this conclusion, the court noted: "'Illinois case law is replete with physicians who have testified, based on observation and experience, regarding their opinion of whether a claimant was injured.' " *Id*. at 566 (quoting *Jackson v. Seib*, 372 Ill. App. 3d 1061, 1073 (2007)).

Here, Dr. Glantz, a board-certified neurologist with experience treating auto accident patients, testified that he relied, in part, on the photographs showing little or no vehicle damage in forming his opinion as to the injuries sustained by plaintiff in the accident. Dr. Glantz testified, similar to the neurologist in *Fronabarger*, that "with minimal accidental injury to the motor vehicle and therefore minimal force it's not likely that there was any significant injury that was suffered to an individual with minimal force of that kind."

The trial court properly allowed Dr. Glantz to opine that, based in part on the photographs of the vehicles involved in the accident, the force of impact was minimal and the likelihood of significant injury therefore was low.

12

Plaintiff next argues the trial court erred in failing to allow Javier Quinones, allegedly trained in automobile mechanics and automobile construction, to be called as a rebuttal witness regarding physical damage to vehicles depicted in photographs. In her brief, plaintiff asserts, without citation to the record, that the trial court denied the request because Quinones' testimony could have been presented in plaintiff's case in chief. The only citations to the record are to (1) two portions of the record that refer to the calling of a police officer as a potential rebuttal witness, but that make no mention of Quinones, and (2) two different witness lists with Quinones' name handwritten thereon. There is no other citation to the record that addresses Quinones.

Plaintiff acknowledges it is within the trial court's discretion to admit or exclude any such purported rebuttal testimony. See *Barth v. Massa*, 201 Ill. App. 3d 19, 33 (1990). In this situation, we presume the trial court's ruling was correct. See *Foutch*, 99 Ill. 2d at 392; *Webster*, 195 Ill. 2d at 432.

Plaintiff also argues the trial court improperly allowed Dr. Glantz to opine that trigger point injections and epidural injections should not be given at the same time, as they were to plaintiff by Dr. Diesfeld. In the testimony at issue, Dr. Glantz stated it is "not typical" to give such injections at the same time. "It's not totally impossible that somebody might do that," Dr. Glantz continued, "but it's not typical." Dr. Glantz further explained:

> "[Y]ou've got to do one or the other. If somebody is complaining of muscle spasm, let's say, from a sprain and you want to treat that, you can do these trigger points, but you sort of have to make one diagnosis or the other, is this a muscle sprain problem or is this a lumbar radicular problem?

13

> If it's a lumbar radicular problem, you don't give the trigger injections, you
>
> give the epidural. So it's a matter of making the correct diagnosis and
>
> treating that correct diagnosis."

According to plaintiff, this testimony improperly referred to a standard of care which was not disclosed and which Dr. Glantz was not qualified to give.

Defendant counters that this case did not involve medical malpractice or any standard of care issues. Defendant argues, however, that the *reasonableness* of the treatments allegedly rendered and the *costs* associated with those treatments *were* at issue in this case, where plaintiff sought compensation for these various medical procedures. Defendant asserts his Rule 213(f)(3) disclosures did state Dr. Glantz would testify about the reasonableness of the treatments allegedly received by plaintiff.[9] According to defendant, it was within Dr. Glantz's qualifications and expertise to opine that it was not reasonable to provide both epidurals and trigger point injections to plaintiff at the same time.

We agree with defendant, and conclude the trial court did not err in allowing this testimony by Dr. Glantz.

Finally, plaintiff argues defense counsel, in closing argument, improperly asked the jury to "have some sympathy for my client as he is being asked to pay over $41,000 in medical bills." Plaintiff notes that she objected, and the trial court sustained the objection.

In support of the language quoted, plaintiff points to a portion of the record which does

---

[9]Defendant's Rule 213(f)(3) disclosures stated, in relevant part, that Dr. Glantz would testify "with respect to Plaintiff's alleged injuries, the reasonableness of any alleged bills for treatments received by the Plaintiff and the appropriateness of alleged treatments in this matter."

not include that language. Indeed, the page cited by plaintiff is actually part of the transcript of counsel's arguments regarding motions *in limine*. The record in this case does not include the parties' closing arguments.

In order to support a claim of error on appeal, the appellant has the burden to present a sufficiently complete record. *Webster*, 195 Ill. 2d at 432. "Where the issue on appeal relates to the conduct of a hearing or proceeding, this issue is not subject to review absent a report or record of the proceeding." *Id*. Any doubts arising from the incompleteness of the record are resolved against the appellant. *Foutch*, 99 Ill. 2d at 392. Here, such doubts are resolved against plaintiff. We presume that any error that might have occurred during closing argument was cured by the trial court. See *Foutch*, 99 Ill. 2d at 392; *Wilbourn v. Cavalenes*, 398 Ill. App. 3d 837, 855 (2010).

## CONCLUSION

For the foregoing reasons, we affirm the decision of the circuit court of Cook County. Affirmed.

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

HYE RA HAN,

        Plaintiff-Appellant,

    v.

WILLIAM HOLLOWAY,

        Defendant-Appellee.

No. 1-10-0568

Appellate Court of Illinois
First District, Second Division

March 1, 2011

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Cunningham and Justice Karnezis concurred in the judgment.

Appeal from the Circuit Court of Cook County.

The Honorable Richard J. Elrod, Judge Presiding.

Basile Law Firm, 180 N. LaSalle Street, Suite 1450, Chicago, Illinois 60601,
(Mark G. Basile, of counsel), for APPELLANT.

LaRose & Bosco, Ltd., 200 North LaSalle Street, Suite 2810, Chicago, Illinois 60601,
(David Koppelman, Andrew Sperry and David J. Berault, of counsel), for APPELLEE.