Cheryl WELLS, Appellant–Plaintiff,

v.

Gloria HICKMAN, Appellee–Defendant,

and

Albert and Geneva Hickman, Appellants–Defendants.

No. 59A01–9505–CV–140.

Court of Appeals of Indiana.

Nov. 8, 1995.

David P. Allen, Allen, Allen & Allen, Salem, for appellant Cheryl Wells.

Gary J. Clendening, Sally Enoch, Mallor Clendening Grodner & Bohrer, Bloomington, for appellants Albert & Geneva Hickman.

James C. Tucker, Tucker & Tucker, Paoli, for appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Cheryl Wells ("Wells") filed a complaint for the wrongful death of her son, D.E., at the hands of L.H., the son of Gloria Hickman ("Hickman") and the grandson of Albert and Geneva Hickman (the "Grandparents"). L.H. beat D.E. to death while the two boys were in the woods behind the Grandparents' home. Wells alleged that Hickman and the Grandparents failed to control L.H. when they were aware or should have been aware that injury to D.E. was possible and that their negligence resulted in D.E.'s death. Wells brings an interlocutory appeal from the trial court's entry of summary judgment in favor of Hickman. The trial court denied Wells' common law negligence claim against Hickman and entered summary judgment based upon a determination that Wells' recovery was limited by statute to $3,000.00 in damages. The Grandparents bring an inter-

locutory appeal from the trial court's denial of their motion for summary judgment. The trial court declined to find as a matter of law that the Grandparents had no duty to prevent the death of D.E. and permitted Wells to maintain her action against them. The two interlocutory appeals were consolidated by order of this court on June 8, 1995.[1]

We affirm in part, reverse in part and remand.

## ISSUES

Several issues are presented on appeal which we restate as follows:

1. Whether Indiana Code § 34-4-31-1 precludes the recovery of damages in a common law action for parental negligence by limiting parental liability for the wrongful acts of the parent's child.

2. Whether Hickman had a parental duty to exercise reasonable care to control L.H. for the safety of D.E.

3. Whether the Grandparents had a duty to protect D.E. from harm.

## FACTS

D.E. and his mother, Cheryl Wells, were neighbors to L.H. and his mother, Gloria Hickman. L.H. and Hickman lived in a trailer located on land owned by L.H.'s grandparents, Albert and Geneva Hickman. The trailer was parked within 100 feet of the Grandparents' house and L.H. was often at their home. Hickman worked the night shift and usually left for work at 10:00 p.m. The Grandparents cared for L.H. while Hickman was at work, and L.H. often ate his meals and snacks at the Grandparents' home. Either Hickman or the Grandparents always knew L.H.'s whereabouts.

Between the Fall of 1990 and October 15, 1991, L.H. killed a pet dog by beating it to death, and he killed a pet hamster. L.H. had also expressed his desire to commit suicide. L.H. often exhibited anger and, on one occasion, he came home from school with a black eye, cuts and bruises. Upon the recommendation of his school principal, L.H. attended

counseling sessions at Southern Hills Counseling Center.

On October 15, 1991, D.E. was celebrating his twelfth birthday. After school, fifteen year old L.H. invited D.E. over to play video games. Wells, D.E.'s mother, agreed. The boys did not play video games and neither Hickman nor the Grandparents were aware that D.E. and L.H. were together. Around 6:30 p.m., L.H. returned home and appeared to be very nervous. Later, L.H. told his mother that he thought he had killed D.E. After a search, D.E.'s body was found lying beside a fallen tree on the Grandparents' property.

## DISCUSSION AND DECISION

### Standard of Review

 The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Fawley v. Martin's Supermarkets, Inc.* (1993), Ind. App., 618 N.E.2d 10, 12, *trans. denied.* When reviewing a motion for summary judgment, we apply the same standard as the trial court, and we resolve any doubt as to a fact, or an inference to be drawn therefrom, in favor of the party opposing summary judgment. *Miller v. Monsanto Co.* (1993), Ind. App., 626 N.E.2d 538, 541. Summary judgment is appropriate only when the designated materials show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *ITT Hartford Ins. Group v. Trowbridge* (1993), Ind.App., 626 N.E.2d 567, 569, *trans. denied.*

 A negligence action is rarely an appropriate case for summary judgment. *Miller*, 626 N.E.2d at 541. Even if a trial court does not believe the party will be successful at trial, summary judgment should not be entered where material facts or inferences conflict. *Id.* However, a plaintiff can recover for negligence only if he establishes that the defendant breached a duty owed to

1. We heard oral argument on October 6, 1995, at Indiana University School of Law in Blooming- ton.

the plaintiff which proximately caused the plaintiff's injuries. *Id.*

### Issue One: Parental Liability for Damages

Wells contends that Indiana Code § 34–4–31–1 does not limit Hickman's liability to $3,000.00 and does not preclude the recovery of damages in a common law action based on parental negligence. Wells argues that the trial court erred when it granted Hickman's motion for summary judgment and, in effect, determined that the statute was the exclusive remedy for the acts of L.H.

■ As a general rule, the common law does not hold a parent liable for the tortious acts of her minor children. *Moore v. Waitt* (1973), 157 Ind.App. 1, 9, 298 N.E.2d 456, 461. Indiana Code § 34–4–31–1, however, imposes liability upon a parent for the harm or damage caused by the knowing, intentional or reckless act of her minor child. Subsection (1) of this statute states in pertinent part:

 (a) As used in this section, "child" means an unemancipated person who is less than eighteen (18) years of age.

 (b) A parent is liable for not more than three thousand dollars ($3,000) in actual damages arising from harm to a person or damage to property knowingly, intentionally, or recklessly caused by the parent's child if:

 (1) the parent has custody of the child; and

 (2) the child is living with the parent.

IND.CODE § 34–4–31–1. The imposition of liability under this statute is in derogation of the common law. *Johnson v. Toth* (1987), Ind.App., 516 N.E.2d 85, 86.

■ Statutes in derogation of the common law must be strictly construed against limitations on a claimant's right to bring suit. *Bartrom v. Adjustment Bureau, Inc.* (1993), Ind., 618 N.E.2d 1, 10. This court presumes that the legislature is aware of the common law and does not intend to make a change in the common law beyond its declaration either by express terms or by unmistakable implication. *Hinshaw v. Board of Commissioners of Jay County* (1993), Ind., 611 N.E.2d 637, 639. In cases of doubt, a statute is construed as not changing the common law. *Bartrom,* 618 N.E.2d at 10. We examine and interpret the statute as a whole with the foremost objective to determine and give effect to the legislative intent. *Duvall v. ICI Americas, Inc.* (1993), Ind.App., 621 N.E.2d 1122, 1125.

■ The plain language of Indiana Code § 34–4–31–1 imposes liability on a parent for not more than $3,000.00 in actual damages for harm to a person or damage to property knowingly, intentionally, or recklessly caused by the parent's child. The parent is liable if the tortious child is a minor and lives with the parent, and that parent has legal custody of the child. There is no requirement under the statute that the parent be found negligent for liability to attach. In sum, the statute makes a parent strictly liable for the knowing, intentional or reckless tortious acts of the parent's minor child.

■ In addition to Indiana Code § 34–4–31–1, there are four common law exceptions to the general rule that a parent is not liable for the tortious acts of her child.

(1) where the parent entrusts the child with an instrumentality which, because of the child's lack of age, judgment, or experience, may become a source of danger to others; (2) where the child committing the tort is acting as the servant or agent of its parents; (3) where the parent consents, directs, or sanctions the wrongdoing; and (4) where the parent fails to exercise control over the minor child although the parent knows or with due care should know that injury to another is possible.

*K.C. v. A.P.* (1991), Fla.App., 577 So.2d 669, 671.[2] Wells' claim is based on the fourth common law exception. She alleges that Hickman was negligent because Hickman failed to control her minor son when she knew or should have known that L.H. would injure D.E.

---

**2.** These exceptions were recognized in *Ross v. Lowe* (1992), Ind.App., 605 N.E.2d 786, 790–91. This case, however, was vacated on other grounds by our supreme court in *Ross v. Lowe* (1993), Ind., 619 N.E.2d 911.

As we have noted, Indiana Code § 34–4–31–1 holds a parent strictly liable for certain acts of her minor child. Unlike the statute, the first and fourth exceptions focus on the negligent act or omission of the parent. The second and third exceptions are virtually indistinguishable and are based on principles of agency with liability attaching when there is a direct nexus between the parent's control and the child's activity. Unlike the statute, all four common law exceptions require more than the existence of a parent-child relationship for liability to attach. Liability under these exceptions is based upon the negligent act or omission of a parent or the parent's direct control over her child, which creates the opportunity for the child to cause the injury. *See Moore,* 157 Ind.App. at 8, 298 N.E.2d at 460. While Indiana Code § 34–4–31–1 confers liability on a parent for the reckless, knowing, or intentional acts of her minor child, the statute was not intended to limit a parent's liability from her own negligence or from her direct control of her minor child. Rather, the purpose of the statute is to protect innocent victims from damage caused by irresponsible judgment proof minors. *See Hyman v. Davies* (1983), Ind.App., 453 N.E.2d 336, 338.

Under Hickman's interpretation, the statute would vitiate the common law exceptions. If we were to interpret the statute as Hickman suggests, a $3,000.00 payment would be the extent of a parent's liability regardless of the type of injury, amount of damages, parental negligence, or direct control over a child's behavior. We do not believe that the legislature intended to place such a limit on a parent's liability. The common law causes of action are separate and distinct from a strict liability claim made under the statute, and any damages which may be recovered under the common law exceptions are not limited by the statute. Contrary to the trial court's conclusion, Indiana Code § 34–4–31–1 is not Well's exclusive remedy and does not preclude a common law cause of action based on the negligence of the parent. We hold that Indiana Code § 34–4–31–1 does not limit a parent's damages to $3,000.00 when the parent is found to be liable under one of the four exceptions stated above. However, any payment a plaintiff recovers pursuant to the statute will reduce the damage award received under a common law exception by the same amount.

## Issue Two: Failure to Control

Wells contends that Hickman had a duty to control her minor son since she knew or should have known that injury to D.E. was possible and, thus, that this case should be remanded for further proceedings. We disagree.

Whether Indiana recognizes a common law cause of action for parental negligence in the failure to control a minor child is an issue of first impression. While our state has adopted the first three of the four common law exceptions, we have not yet recognized the fourth exception to the general rule that parents are not liable for the tortious acts of their minor children. That exception is at issue in the present case, and we now recognize parental failure to control as a viable cause of action.

The failure to control exception, like the other common law exceptions, imposes liability upon the parent for the torts of her minor child. *See Ross,* 619 N.E.2d at 915. Contrary to Wells' contention, however, the fourth exception does not impose vicarious liability based solely upon the familial relationship. Rather, under that exception, a parent's negligence is a separate act of negligence independent of the child's wrongful act. The parent's negligence is nonactionable in the absence of a wrongful act of the child. *See Bankert by Habush v. Threshermen's Mut. Ins. Co.* (1983), 110 Wis.2d 469, 329 N.W.2d 150, 154; *see accord Moore,* 157 Ind.App. 1, 8, 298 N.E.2d 456, 460; *see Prosser and Keeton on Torts* § 123, at 914 (5th ed. 1984) (liability for torts of family may be based upon negligence of defendant himself).

The failure to control exception provides that a parent has a duty to exercise control over her minor child "when the parent knows or should know that injury to

another is possible."[3] *K.C.* 577 So.2d at 671. To be liable the parent must know that her child "had a habit of engaging in the particular act or course of conduct which led to the plaintiff's injury." *Id.* The duty to control one's child is described in the Restatement (Second) of Torts as follows:

A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent

(a) knows or has reason to know that he has the ability to control his child, and

(b) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 316, at 123–24 (1965).

■■■ Imposition of a duty is limited to those circumstances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 997. We conclude that a duty attaches when there has been a failure to control and the parent knows or should have known that injury to another was reasonably foreseeable. Specifically, the parent must know or should have known that the child had a habit of engaging in the particular act or course of conduct which led to the plaintiff's injury. *See K.C.,* 577 So.2d at 671; *Parsons v. Smithey* (1973), 109 Ariz. 49, 53, 504 P.2d 1272, 1276.

The critical issue in this case is foreseeability, and we must determine whether Hickman knew or with due care should have known that L.H. would injure D.E. The facts show that between the Fall of 1990 and October 15, 1991, L.H. had killed a pet dog by beating it in the head and had also killed a pet hamster by throwing it on the ground. On one occasion, L.H. came home from school with injuries indicating he had been in a fight. He also talked about committing suicide. Hickman stated in her deposition that "[L.H.] was full of anger and I didn't know why." Record at 75. She further testified that L.H. seemed to have an "uncontrolled anger" and that "he would get upset with anybody and then he'd get over it." Record at 80. Hickman placed L.H. in counseling where he received minimal treatment.

■■ The record indicates Hickman knew that L.H. was a troubled child and she could anticipate the same type of conduct that he had exhibited in the past. Upon the advice of a school principal and from her personal observations, Hickman was aware that L.H. needed professional help. Nevertheless, we cannot conclude, based upon L.H.'s cruelty to animals and his comment about committing suicide, that it was reasonably foreseeable he would kill a neighborhood friend. The boys apparently had played together previously without incident and Hickman could not have seen L.H.'s behavior as a precursor to homicide or even that L.H. would harm D.E. Neither the type of harm inflicted nor the victim in this case was foreseeable and, thus, cannot support the imposition of a duty upon Hickman. *See Parsons,* 109 Ariz. at 54, 504 P.2d at 1277 (parents could not foresee child would attack another person with hammer and saw off ear); *see K.C.,* 577 So.2d at 671 (unforeseeable that minor child would sexually abuse another child).

Public policy supports the imposition of a duty to control on a parent under the proper circumstances, but it does not in this case. Parents are in a unique position in society because they have a special power to observe and control the conduct of their minor children. *See Prosser and Keeton on Torts* § 123 at 914–15 (5th ed. 1984). The power held by a parent is unlike that held by a child's teachers or peers because a parent has the ability to influence a child's behavior from birth and can observe and modify her child's actions. A parent, unlike a teacher, is in the best position to discover and act upon changes in her child's personality and behavior. Parents have a duty to exercise this power reasonably, especially when they have notice of a child's dangerous tendencies. *See*

---

**3.** We reject the use of the word "possible" in this common law exception. The word "possible" is a term without legal significance; a possibility has no probative value and is nothing more than speculation. *See, e.g., Palace Bar, Inc. v. Fearnot* (1978), 269 Ind. 405, 415, 381 N.E.2d 858, 864; *R.E.G. v. L.M.G.* (1991), Ind.App., 571 N.E.2d 298, 303.

*id.* That is not to say that a parent should be responsible for behavior that is not reasonably foreseeable, nor should a parent be held responsible for general incorrigibility or a nasty disposition. *See id.*

We hold that a cause of action for parental negligence in the failure to control may be maintained in Indiana, but we decline to find a duty in this case. A duty may be imposed upon a parent for her failure to control her child when the parent knows or should know that the child has engaged in a particular act or course of conduct and it is reasonably foreseeable that this conduct would lead to the plaintiff's injuries. We conclude, as a matter of law, that Hickman had no duty to exercise control over L.H. because the harm and the victim were not reasonably foreseeable. *See Webb*, 575 N.E.2d at 995. Therefore, summary judgment in favor of Hickman is appropriate.

### Issue Three: The Grandparents

Wells next contends that the failure to control exception may be extended to the Grandparents in this case because they assumed a parental role over L.H., their grandson. We cannot agree.

■ As we have already stated, imposition of a duty under this exception requires that the parent knew or should have known that injury to another was reasonably foreseeable. In Issue Two, we concluded that Hickman could not have reasonably foreseen that L.H. would kill or even harm D.E. and, likewise, we conclude that the Grandparents could not have foreseen this occurrence. Therefore, the trial court erred by failing to enter summary judgment in favor of Albert and Geneva Hickman.[4]

Wells also asserts that the Grandparents are liable based on a negligent entrustment theory and claims that because L.H. was entrusted to their care, they are responsible for the death of D.E. Again, we must disagree.

■ There is a well recognized duty in tort law that persons entrusted with children have a duty to supervise their charges. *Ve-*

tor *by Weesner v. Vetor* (1994), Ind.App., 634 N.E.2d 513, 515; *Johnson v. Pettigrew* (1992), Ind.App., 595 N.E.2d 747, 753. The duty is to exercise ordinary care on behalf of the child in custody. *Johnson*, 595 N.E.2d at 753. The duty exists whether or not the supervising party has agreed to watch over the child for some form of compensation. *Id.*

■ Wells argues that *Vetor* and *Johnson* permit the imposition of a duty upon the Grandparents because they supervised L.H. and had a duty to exercise reasonable care over L.H. for the benefit of D.E. Contrary to Wells' assertion, the critical relationship under a negligent entrustment theory is not the relationship between the Grandparents and their grandson, L.H., but rather, the relationship between the Grandparents and D.E. *See id.* Unlike the children in *Johnson* and *Vetor*, who were entrusted to the care of the defendants, D.E. was not entrusted to the Grandparents' care. Indeed, the Grandparents were unaware of D.E.'s presence on their property. There was no relationship between the Grandparents and D.E. that would give rise to a duty under a negligent entrustment theory.

■ Finally, Wells contends that the Grandparents owed D.E. a duty to protect him from harm because he was a social guest upon their premises. A landowner owes a social guest the same duty of care as an invitee. *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637, 643. That duty is to exercise reasonable care for a person's protection while he is on the landowner's premises. *Id.* The duty extends not only to harm caused by a condition of the land but also to activities being conducted on the land. *Ross*, 619 N.E.2d at 915.

■ Assuming that D.E. was a social guest upon the Grandparents' property, he would be owed a duty of reasonable care. This duty requires:

A person to anticipate and guard against what usually happens or is likely to happen and that a failure to do this is negligence;

4. Because we conclude that the Grandparents in this case did not have a duty to control their grandson, we need not decide whether grandpar-

ents, as a class, are subject to liability for failure to control their grandchildren.

but that reasonable care does not require him to foresee and guard against that which is unusual and not likely to occur, and a failure to do this is not negligence. *Vetor*, 634 N.E.2d 513, 517. Although the Grandparents were aware that L.H. had emotional problems, they could not have foreseen and guarded against the death of D.E. Because this event was unlikely to occur, they were not negligent. Further, D.E. was not injured by a condition or activity conducted on the land. We do not find the presence of a troubled child to be equivalent to a dangerous condition or activity on the premises. The trial court erred when it denied the Grandparents' motion for summary judgment as they did not have a duty under the circumstances to exercise control over their grandson, they were not entrusted with D.E.'s care and, finally, they were not responsible for D.E.'s death based on premises liability.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to enter judgment for Albert and Geneva Hickman and against Cheryl Wells, and for Cheryl Wells and against Gloria Hickman in the amount of $3,000.00.

BAKER and ROBERTSON, JJ., concur.