Jane NIELSEN, Jonathan Lopez, a minor by Jeffrey A. Pitman, his Guardian, and Gerardo Lopez, Plaintiffs-Appellants,†

GREAT NORTHERN CORPORATION, Involuntary-Plaintiff,

v.

Terese A. SPENCER, Franklin Spencer, and State Farm Fire & Casualty Company, Defendants-Respondents.

Court of Appeals

*No. 2004AP3032. Submitted on briefs June 22, 2005. —Decided August 10, 2005.*

2005 WI App 207

(Also reported in 704 N.W.2d 390.)

† Petition to review withdrawn 9-28-05.

274

275

On behalf of the plaintiffs-appellants, the cause was submitted on the brief of *Jonathan P. Groth* of *Pitman, Kyle & Sicula, S.C.*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Robert Bull* and *Matthew T. Fricker* of *Crivello, Carlson & Mentkowski, S.C.*, Milwaukee.

Before Anderson, P.J., Brown and Snyder, JJ.

¶ 1. ANDERSON, P.J.   Terese A. Spencer's son, Franklin Spencer, allegedly hit Jonathan Lopez over the head with a weapon causing him to sustain serious head injuries. Jane Nielsen, Lopez's mother, and Lopez, by his father and a guardian ad litem, filed a claim against Terese for negligent failure to control a child pursuant to RESTATEMENT (SECOND) OF TORTS § 316 (1965). Lopez argues that the circuit court erred by granting

partial summary judgment in favor of Terese because genuine issues of material fact exist regarding whether Terese knew, or should have known, of the necessity and opportunity for controlling Franklin. We conclude that the record does not contain any evidence suggesting Terese knew, or should have known, of specific instances of prior conduct sufficient to put her on notice that the act complained of was likely to occur, and of the opportunity to exercise her ability to control Franklin. We affirm.

## *Facts*

¶ 2. On February 5, 2002, Franklin, who was sixteen years old, and a few of his friends encountered Lopez and a group of his friends at the Regency Mall in Racine. Lopez and Franklin had never spoken to one another, but were acquainted through mutual friends. The two first engaged in small talk without incident; however, they later exchanged words and the parties stepped outside the mall. Once outside the mall, the parties confronted each other and Franklin allegedly hit Lopez in the head with a blackjack.[1] Lopez allegedly suffered a serious head injury as a result.

¶ 3. In June 2003, Nielsen and Lopez, by his father and a guardian ad litem, filed suit against Terese, alleging, in pertinent part: (1) negligent failure to control her son Franklin and (2) negligent failure to warn Franklin of the hazards of using a weapon to strike a blow. As to the first cause of action, Lopez maintained that Terese was negligent "by allowing FRANKLIN, access, possession of and use of a weapon, and/or, in the alternative by failing to deter, supervise,

---

[1] "Blackjack," as that term is used in this case, refers to a pole or metal rod used by police.

prevent, discover and remove any weapons from FRAN-KLIN." As to the second cause of action, Lopez argued that Terese was negligent for failing "to properly warn and instruct FRANKLIN of the dangers involved in using a weapon [and] in allowing a weapon into her home."

¶ 4.   In April 2004, Terese moved for partial summary judgment as to the claims against her. First, as to the negligent failure to control claim, Terese argued that she did not know and should not have known of the necessity and opportunity for exercising control over Franklin on the date of the incident. Second, as to the negligent failure to warn claim, Terese contended that there is no authority in Wisconsin recognizing a parental duty to warn or instruct minors of the dangers involved in using a weapon to strike a blow. Terese relied on the statements she made in her deposition to support her arguments.

¶ 5.   Terese testified that she and Franklin's father home schooled Franklin from the fourth grade until he finished high-school-level material. She and his father taught him for three hours per day, seven days per week in order to meet the state's hour requirements. She remarked that she had reduced her work hours so that she could be home at 3:00 p.m. every day. She stated that she was not aware of Franklin's involvement in any criminal activities prior to February 5, 2002, she did not consider Franklin to be a violent person, she had never known Franklin to use an instrument or any kind of object to injure another person, and prior to February 5, she was not aware of Franklin owning a blackjack. She averred that she did not know Lopez before February 5. She also said that she was not aware of Franklin's involvement in any kind of theft of property prior to February 5, but that

she did recall having to pay for damages resulting from a window he had broken at some point.

¶ 6.   In his motion opposing partial summary judgment, Lopez argued that there were genuine issues of material fact regarding Terese's awareness of Franklin's prior criminal activity and her acts and omissions in controlling, educating and parenting Franklin. Lopez observed that he had not received an answer to his request for confidential police records concerning Franklin's criminal history and, as a result, the court did not know whether Franklin had committed or was charged with any crimes prior to February 5. Lopez further pointed out that in her deposition Terese testified that she did not know or could not recall whether Franklin had ever been disciplined at work, what he did with his money, whether his friends drove him around town, whether he had a girlfriend, who his friends were, whether he had any friends she did not approve of and whether they came over to her house, and whether she had ever spoken with any of his friends' parents.

¶ 7.   The circuit court held a hearing on the partial summary judgment motion on July 8, 2004. The court opened the hearing with a discussion of its in camera review of confidential police department reports involving the department's contacts with Franklin. According to the court, Franklin had a number of contacts with the police prior to February 5, "but the majority of his contact had to do with criminal damage to property." The court noted that the police reports listed Franklin as a victim of two assaults and referenced one 1999 situation where "there may have been a physical altercation with another individual." According to the court, one of the police reports indicated that Terese "expressed frustration at her ability to control her son."

279

The court also explained that while Franklin was a suspect a number of times, he was not convicted. In light of this evidence, the court concluded that "nothing I find that until the incidents that gave rise to this lawsuit that [Franklin's] behavior was so outrageous [Terese] would have had a notion of his problems leading to delinquency." The court subsequently issued an order granting Terese's motion for partial summary judgment and dismissing her from the action. Lopez now appeals.

### Standard of Review

¶ 8. Procedurally, this case turns on whether the circuit court properly granted summary judgment in favor of Terese. WISCONSIN STAT. § 802.08 (2003–04)[2] sets forth when a circuit court may appropriately grant summary judgment. According to § 802.08(2), summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

¶ 9. Although we review a grant of summary judgment independently, we use the same methodology as the circuit court. *Strasser v. Transtech Mobile Fleet Serv., Inc.*, 2000 WI 87, ¶ 30, 236 Wis. 2d 435, 613 N.W.2d 142. Thus, we apply the criteria set forth in Wis. STAT. § 802.08(2). Our first step is to determine if the pleadings set forth a claim for relief. *Trinity Evangelical Lutheran Church and School-Freistadt v. Tower Ins.*

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

*Co.*, 2003 WI 46, ¶ 32, 261 Wis. 2d 333, 661 N.W.2d 789. If such claim is set forth, and the moving party has established a prima facie case for summary judgment, we examine the record to determine whether there exist disputed material facts, or undisputed material facts, from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial. *Id.*

¶ 10.  The burden is on the moving party to prove that there are no genuine issues of material fact. *Strasser*, 236 Wis. 2d 435, ¶ 31. An issue of fact is genuine if a reasonable jury could find for the nonmoving party. *Id.*, ¶ 32. A material fact is such fact that would influence the outcome of the controversy. *Id.*

### Discussion

¶ 11.  The sole issue we visit on appeal is whether there exist genuine issues of material fact regarding Lopez' claim of negligent failure to control the conduct of a child.[3] Lopez appears to argue that the police department records indicate that Franklin had "violent and delinquent tendencies" and therefore raise a jury

---

[3] On appeal, Lopez does not appear to raise an argument concerning his failure to warn claim. "[A]n issue raised in the trial court, but not raised on appeal, is deemed abandoned." *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998). Even if he has not entirely abandoned the claim, he has not adequately, and with some prominence, argued the issue for this court to decide. *See id.* at 491–92. We therefore will not address the failure to warn claim further.

question as to whether Terese knew, or should have known, of the necessity and opportunity for controlling Franklin.

¶ 12. Our supreme court has adopted RESTATEMENT (SECOND) OF TORTS § 316 (1965), Duty of Parent to Control Conduct of Child, as an applicable standard of conduct in negligence actions. *Gritzner v. Michael R.*, 2000 WI 68, ¶ 49, 235 Wis. 2d 781, 611 N.W.2d 906. That section provides:

> A parent is under a duty to exercise reasonable care so to control his [or her] minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
>
> (a) knows or has reason to know that he [or she] has the ability to control his [or her] child, and
>
> (b) knows or should know of the necessity and opportunity for exercising such control.

RESTATEMENT (SECOND) OF TORTS § 316 (1965). Wisconsin's civil jury instructions restate this standard of conduct as follows:

> A parent must use ordinary care to control (his) (her) minor child so as to prevent the child from intentionally harming others or from conducting (himself) (herself) so as to create an unreasonable risk [of] bodily harm to others, if the parent knows or should know:
>
> (1) that (he) (she) has the ability to control the child;
>
> (2) that there is a necessity for exercising such control; and
>
> (3) that there is an opportunity to do it.

WIS JI—CIVIL 1013.

282

¶ 13. With this standard in mind, we have carefully reviewed the police department records and the deposition testimony Lopez relies upon to support his contention. Even when viewed most favorably to Lopez, this evidence does not establish that Terese knew, or should have known, at the time of the February 5 incident of the opportunity and necessity for controlling Franklin.

¶ 14. The Restatement's parental duty to control has been interpreted narrowly, both in Wisconsin and elsewhere. *See* Jeffrey L. Skaare, Note, *The Development and Current Status of Parental Liability for the Torts of Minors,* 76 N.D. L. REV. 89, 97 (2000) (noting that the Restatement's necessity element has been interpreted narrowly); *Gritzner,* 235 Wis. 2d 781, ¶ 58 (noting that the legal theory of parental duty to control the conduct of a child provides narrow, well-defined guidelines for evaluating liability). Mere knowledge by the parent of a child's mischievous and reckless, heedless or vicious disposition is not of itself sufficient to impose liability with respect to torts of a child. *See Bieker v. Owens,* 350 S.W.2d 522, 525 (Ark. 1961); *Dinsmore-Poff v. Alvord,* 972 P.2d 978, 981, 986 (Alaska 1999). Specifically, the parent must know, or should have known, that the child had a habit of engaging in the particular act or course of conduct which led to the plaintiff's injury. *See Dinsmore-Poff,* 972 P.2d at 986; *Barth v. Massa,* 558 N.E.2d 528, 534 (Ill. App. Ct. 1990); Skaare, *supra,* at 95, 97. Simply put, no parental liability exists without notice of a specific type of harmful conduct and an opportunity to interfere with it. *Barth,* 558 N.E.2d at 535.

283

¶ 15. The record in this case contains no evidence from which it could be reasonably inferred that Terese knew, or should have known, of specific acts of prior conduct sufficient to put her on notice that the act Lopez complains of was likely to occur. Terese averred that she did not know Lopez, she did not consider Franklin to be a violent person, she had never known Franklin to use an instrument or any kind of object to injure another person, and she was not aware of Franklin owning a blackjack prior to February 5. The evidence simply does not suggest that she knew, or should have known, otherwise in February 2002.

¶ 16. The police department records do indicate that Franklin had several contacts with the police prior to February 5.[4] However, the majority of these contacts involved nonviolent delinquent behavior, not of the type alleged in the Lopez incident. For example, Franklin had been named as a suspect for bicycle thefts, knocking over of construction barricades and a possible attempted burglary. Terese had reported Franklin as a runaway. He also was arrested for criminal damage to property for breaking a window, but was not convicted prior to the February 5 incident.

¶ 17. There is only one reference in the police reports and testimony to a possible physical altercation in which Franklin was an aggressor and not a victim. It

---

[4] As Lopez correctly points out, the police did locate what they considered to be drug paraphernalia and a small quantity of marijuana in Franklin's bedroom. However, the items were discovered during a search executed after the February 5 incident. Furthermore, even if Terese knew, or should have known, of the presence of drugs or drug paraphernalia prior to February 5, it would not have put her on notice of the "specific type of harmful conduct" that led to Lopez' injury. *See Barth v. Massa*, 558 N.E.2d 528, 534–35 (Ill. App. Ct. 1990).

is this incident that Lopez focuses on. In 1999, Franklin allegedly broke another teenager's skateboard and then punched the teenager in the chest and head. Even if we assume that Terese was fully aware of the nature of Franklin's conduct, the incident occurred nearly three years before Franklin's run-in with Lopez and the other teenager involved in the incident did not report any visible or otherwise detectable injury as a result of the punches. We conclude that there are no facts that Terese should have or could have known about showing that Franklin had a habit of engaging in violent, aggravated batteries on other children by the use of dangerous instrumentalities. Terese seems to suggest that Franklin may not have used a blackjack or other weapon when he beat Lopez. Even if Franklin's use of a blackjack or other weapon is in dispute, it is not an issue of "material fact." Regardless of the nature of Franklin's weapon, whether it be a blackjack or his fists, there are no facts that Terese should have or could have known about showing that Franklin had a *habit* of engaging in violent, aggravated batteries on other children. *See Barth*, 558 N.E.2d at 534 (holding that a parent must know or should have known that the child had a habit of engaging in the particular act or course of conduct which led to the plaintiff's injury).

¶ 18. Furthermore, there is no evidence in the record of the opportunity to prevent the conduct alleged in this case. "The duty of a parent is only *to exercise such ability to control his [or her] child as he [or she] in fact has at the time* when he [or she] has the opportunity to exercise it and knows the necessity of so doing." RESTATEMENT (SECOND) OF TORTS § 316 cmt. b (1965) (emphasis added). In *Seibert v. Morris*, 252 Wis. 460, 462, 32 N.W.2d 239 (1948), the injury occurred when a

child obtained possession of his father's bow and arrow and was shooting in the air in the presence of other children. Our supreme court refused to hold the child's father liable, explaining, in part, that the father "was out of town at the time and had no immediate control of the situation." *Id.* at 463. Similarly, in this case it is undisputed that Franklin's altercation with Lopez did not occur in the vicinity of or in close proximity to Terese. In addition, there is nothing to suggest that Terese knew, or should have known, that when Franklin left the house prior to the February 5, 2002 incident, he had in his possession, or would obtain, an instrument to use as a weapon or that he would otherwise get into a physical altercation.

¶ 19.   Absent some evidence, viewed most favorably to Lopez, that Terese knew, or should have known, of the necessity and opportunity for controlling Franklin's conduct on February 5, there can be no liability. We hold, therefore, that the circuit court properly granted Terese's partial motion for summary judgment.

¶ 20.   Other jurisdictions have applied the standard set forth in § 316 of the Restatement under similar circumstances and have reached similar conclusions. For example, in *Barth*, a fifteen-year-old boy's parents knew that he had misused BB guns at least once, firing at other children, but had failed or refused to get him counseling. *Barth*, 558 N.E.2d at 531. The boy later purchased stolen guns and hid them in the house. *Id.* at 530–31. Two weeks later, he and a friend broke into a store to steal ammunition, and when police fired at them as they fled, the boy shot and injured an officer. *Id.* The court held that the parents were entitled to a directed verdict on the claim of failure to control a child. *Id.* at 535. The court explained that the BB gun

incidents could not "reasonably be interpreted as putting the [parents] on notice that [the boy] was likely to buy a stolen gun, commit a burglary, and shoot a police officer," *id.* at 534, and there also was no evidence of the opportunity to prevent the shooting since the parents were not present at or nearby the scene. *Id.* at 535.

¶ 21.   In a similar vein, in *Wells v. Hickman*, 657 N.E.2d 172, 175, 178 (Ind. Ct. App. 1995), a fifteen-year-old boy killed a neighborhood friend outside the presence of the fifteen-year-old's mother. The court refused to impose liability on the mother for failure to control a child despite the fact that the mother knew that her son had violently killed pets, had discussed committing suicide and possibly had been in a fight at school. *Id.* at 178. The court explained that the two children had played together previously without incident and the mother could not have seen her son's past behavior as a precursor to homicide or even that her son would harm the particular neighbor. *Id.* According to the court, "[n]either the type of harm inflicted nor the victim in this case was foreseeable and, thus, cannot support the imposition of a duty upon [the mother]." *Id.*

¶ 22.   These factually analogous cases teach that § 316 of the Restatement does not require parents to anticipate and guard against every logically possible instance of misconduct. This is so even where, as here, the parent was aware, or at the very least, should have been aware of the child's past delinquent but dissimilar behavior. *See Barth*, 558 N.E.2d at 531 (shooting others with a BB gun); *Wells*, 657 N.E.2d at 178 (violence towards animals, suicidal expressions and a fight at school). "Section 316 does not, after all, purport to make parents vicariously liable for raising careless or delinquent children," *Barth*, 558 N.E.2d at 535, nor does it

287

intend "to transform parents from care givers and disciplinarians into the jailors and insurers of their minor children." *Williamson v. Daniels*, 748 So. 2d 754, 761–62 (Miss. 1999) (relying in part on *Barth*).[5]

### Conclusion

¶ 23. The record fails to raise a jury question as to whether Terese knew, or should have known, at the time of the incident, of the necessity and opportunity for exercising control over Franklin so as to prevent him from committing the act of physical violence against Lopez. For that reason, no trial is necessary to determine whether Terese violated her parental duty to control the conduct of a child. We affirm the circuit court's grant of partial summary judgment in her favor.

*By the Court.*—Order affirmed.

[5] We also note that Lopez suggests that because Terese home schooled Franklin, her "duty to control and discipline her child went beyond that of a parent—she was also accountable as Franklin's teacher." Lopez cites *Lueck v. City of Janesville*, 57 Wis. 2d 254, 262, 204 N.W.2d 6 (1973), for the proposition that teachers have a duty to warn or instruct pupils in their custody of any dangers which he or she knows are present and of the methods to protect themselves from those dangers. *Lueck*, however, described the duty teachers owe to their pupils. Lopez provides no authority for the proposition that a teacher owes a duty to a nonstudent to protect that nonstudent from an injury inflicted by a student off school premises. We therefore decline to address the issue further.