COURT OF APPEALS
DECISION
DATED AND FILED

November 19, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1609**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021CV7591

**IN COURT OF APPEALS
DISTRICT I**

---

ROBERT REIMAN,

PLAINTIFF-APPELLANT,

V.

JOSHUA DELANEY,

DEFENDANT-RESPONDENT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: LINDSEY GRADY, Judge. *Reversed and cause remanded for further proceedings.*

Before White, C.J., Donald, P.J., and Colón, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Robert Reiman appeals from a judgment of the circuit court entered in favor of Joshua Delaney and dismissing Reiman's complaint alleging several causes of action against Delaney related to what Reiman contends was a joint business venture. For the reasons set forth below, we reverse the circuit court's entry of judgment in favor of Delaney, and we remand this matter for further proceedings consistent with this opinion.

## BACKGROUND

¶2 The dispute in this case revolves around FAB Nutrition, LLC (FAB). FAB is an online business that sells cannabidiol (CBD) products. On October 9, 2017, Delaney registered FAB in Florida as an LLC, and at the time of registration, Delaney listed himself as the manager and sole member.[1] As of 2021, High Tide, Inc., a publicly traded Canadian corporation, bought 80% of FAB for approximately $20.64 million.

¶3 Following High Tide's purchase of FAB, Reiman filed a complaint against Delaney and sought a declaratory judgment that FAB was a joint venture between Reiman and Delaney. Reiman additionally alleged causes of action for breach of fiduciary duty, breach of the implied duty of good faith, breach of contract, and promissory estoppel.

¶4 In his complaint, Reiman alleged that he provided $10,000 to Delaney as start up money for FAB. He further alleged that, despite Delaney taking charge of FAB's day-to-day operations, Reiman was nevertheless involved with running the business as a co-owner and co-operator, particularly through

---

[1] FAB was converted to a Wisconsin LLC on June 24, 2019.

managing FAB's social media presence and representing FAB at events. He further alleged that he discussed FAB's business on several occasions with Delaney, Delaney recognized Reiman as a partner, and Reiman received a distribution of profits from FAB in 2018 in the amount of $20,000. In support of his allegations, Reiman produced several text messages that he exchanged with Delaney and provided several social media posts.

¶5      Delaney moved for summary judgment, and he argued that Reiman's claims failed in their entirety because Reiman could not prove two essential elements of a joint venture. Specifically, Delaney argued that Reiman could not prove that he exercised any control over FAB or that he ever shared in FAB's profits. Rather, Delaney alleged that he was FAB's sole owner and operator, that he ran all of FAB's operations, that Reiman received a payment from FAB as payment for Reiman's services in developing FAB's social media presence, and that the two discussed FAB more as friends than as business partners.[2]

¶6      The circuit court granted Delaney's motion, entered judgment in Delaney's favor, and dismissed Reiman's complaint. Reiman now appeals. Additional relevant facts will be set forth below as necessary.

## DISCUSSION

¶7      On appeal, Reiman argues that the circuit court erroneously granted Delaney's motion for summary judgment because there are disputed issues of material fact that preclude summary judgment. We agree.

---

[2] In fact, Delaney described their conversations in his brief on appeal as "two friends 'bouncing ideas off of each other.'"

¶8      Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2021-22).[3]  The moving party bears the burden of proving that there are no genuine issues of material fact. *Nielsen v. Spencer*, 2005 WI App 207, ¶10, 287 Wis. 2d 273, 704 N.W.2d 390.  "An issue of fact is genuine if a reasonable jury could find for the nonmoving party," and "[a] material fact is such fact that would influence the outcome of the controversy." *Id.*  We review a circuit court's decision granting summary judgment "independently of the circuit court, benefiting from its analysis." *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶21, 241 Wis. 2d 804, 623 N.W.2d 751.

¶9      In this case, it is undisputed that Reiman's claims turn on the existence of FAB as a joint venture between Reiman and Delaney, and Delaney's motion for summary judgment can be resolved by answering whether FAB was a joint venture.  Thus, we turn to the question of whether FAB was a joint venture.

¶10     Joint venture is a concept of "modern origin" and "often used to describe a special business arrangement of less dignity but partaking of some essentials of a partnership and governed by the laws applicable thereto[.]" *Edlebeck v. Hooten*, 20 Wis. 2d 83, 87-88, 121 N.W.2d 240 (1963).  A joint venture requires proof of four elements:

> (1) Contribution of money or services but not necessarily in equal proportion by each of the parties, (2) joint

---

[3] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

proprietorship and mutual control over the subject matter of the venture, (3) an agreement to share profits though not necessarily the losses, and (4) a contract express or implied establishing the relationship.

*Id.* at 88.

¶11    Delaney moved for summary judgment on the two elements of joint control and profit sharing.  He argues that the facts undeniably demonstrate that Delaney was in control of FAB's operations, and a joint venture requires that Reiman have had an equal voice in FAB's operation to establish the element of joint control.  *See* **Bowers v. Treuthardt**, 5 Wis. 2d 271, 280-81, 92 N.W.2d 878 (1958) ("[C]ourts ordinarily require clear evidence of a community of interest in a common undertaking in which each participant has or exercises the right of equal or joint control and direction." (citation omitted)).  He further argues that a joint venture requires a specific profit-sharing agreement, and Reiman failed to identify any specific agreement between the parties or that Reiman ever shared in FAB's profits.  As a result of Reiman's failure to establish either of these two elements, Delaney maintains that Reiman cannot prove that FAB was a joint venture and, consequently, all of Reiman's claims must fail.

¶12    We disagree, and we conclude that several genuine issues of material fact preclude summary judgment at this juncture.  In particular, to grant summary judgment for Delaney at this juncture requires choosing between Reiman's version of the facts and Delaney's version.  Such a choice requires weighing the evidence and pitting Reiman's credibility against Delaney's credibility.  Weighing of the evidence and credibility determinations are not appropriate for summary judgment, and therefore, the circuit court erroneously granted Delaney's motion for summary judgment.  **Pum v. Wisconsin Physicians Serv. Ins. Corp.**, 2007 WI App 10, ¶16, 298 Wis. 2d 497, 727 N.W.2d 346 ("If alternative inferences to be

drawn from particular facts depend on the credibility of the witness asserting either the fact or the inference, summary judgment is not appropriate.").

¶13   As previously noted, Reiman produced several text messages and social media posts in support of his claim that FAB was a joint venture between Reiman and Delaney.  As the circuit court summarized in its decision, "from April 2017 to July 2021 … Reiman and Delaney exchanged almost 16,000 text messages," and "the bulk of those texts—almost 12,500 text messages—were sent between April 2017 through December 2018[.]"  The circuit court continued by describing that "the parties' correspondence reveals the conception, formation and initiation of [FAB] as an online business."  Indeed, the circuit court described that certain text messages "suggest that the business would be co-owned and co-operated."  The circuit court further recognized other facts suggesting support for Reiman's claims, such as the fact that Delaney and Reiman held two of the four original email accounts created for FAB, Reiman gave Delaney $10,000 in October 2017, and Reiman received payments from FAB.

¶14   Curiously, the circuit court nevertheless found that certain other pieces of evidence in the record, including the lack of a formal written contract, the LLC registration documents listing Delaney as the sole manager and member, and other text messages and social media posts, required a finding that FAB was not a joint venture between Reiman and Delaney.  We conclude that this was error. The inferences to be drawn from the text messages and social media posts, what weight should be assigned to any of them, and what weight should be assigned to other documentary evidence is a matter of credibility and weighing of the evidence—a task that is inappropriate at summary judgment.  *Pum*, 298 Wis. 2d 497, ¶16.  Moreover, should we assign any inference from these text messages,

social media posts, and other items, we must assign the inference most favorable to Reiman as the non-moving party. *Lambrecht*, 241 Wis. 2d 804, ¶23.

¶15 Turning specifically to the element of joint control, Delaney argues that the vast majority of the evidence demonstrates that he exercised control over the day-to-day operations, and he provides a list of several tasks he performed for the sake of the business. He then argues that Reiman's actions in regards to controlling business operations pales in comparison to the amount he did for the business such that there is no genuine dispute that Reiman had any control over FAB. However, the sheer fact that Delaney texted Reiman at the time that FAB began that it was "nonnegotiable" that Delaney would be "head of the ship" and "in control" is just one of the facts that betray Delaney's claim and creates a genuine dispute of material fact. If the matter of control were as settled as Delaney would lead us to believe, there would have been no need for him to establish his place as "head of the ship" at the time that FAB was established in 2017.

¶16 Next, on the element of sharing profits, neither party disputes that Reiman received a $20,000 payment from FAB in December 2018. Based on text messages between Reiman and Delaney, Reiman argues that the money he received from FAB was intended as a distribution of profits. By contrast, Delaney argues that Reiman did not receive any distribution of profits but instead was receiving payment for services Reiman—in his capacity as Reiman Enterprises LLC, d/b/a Eyeball Media[4]—rendered to FAB for managing FAB's online

---

[4] Reiman Enterprises is a business that Reiman started in 2017. Reiman Enterprises provides photography, videography, and marketing services.

presence. Delaney additionally provides invoices generated for Reiman Enterprises and tax forms for reporting the payments to support his interpretation of the text messages. Reiman claims, however, that he was unaware that any invoice for his company was ever generated. In light of Reiman's denial, resolving this dispute requires a credibility determination and weighing of the evidence presented by the parties—a matter which is best left for trial. *Pum*, 298 Wis. 2d 497, ¶16.

¶17 Even though Delaney moved for summary judgment on two elements of a joint venture, Reiman nonetheless discusses the remaining two elements of contribution of money or services and a contract establishing the relationship. As they were not the focus of Delaney's motion for summary judgment, we briefly recognize the existence of genuine disputes of material fact as to these two elements.

¶18 In regards to the element of contribution of money or services, Reiman claims to have provided $10,000 to Delaney as start up money for FAB. Delaney acknowledges that Reiman paid him $10,000; however, Delaney contends that this money was exchanged in essence to allow Reiman to follow him around while Delaney set up FAB in order that Reiman might learn how to set up a business. In support of the existence of a contract, Reiman claims that conversations between Reiman and Delaney demonstrate the existence of an agreement between the two to co-own and co-operate FAB. On the other hand, Delaney denies that any of the text messages or social media posts that Reiman uses to support his claim demonstrate any agreement. Similar to what we have discussed above, the resolution of these two elements requires credibility determinations and weighing of evidence that is not appropriate at the summary judgment stage.

8

¶19    Having so concluded as to the bulk of Reiman's claims against Delaney, we further conclude that the circuit court erroneously granted Delaney's motion for summary judgment as to Reiman's claim for promissory estoppel as well.  As Delaney states in his brief, Reiman's claim for promissory estoppel is "his alternative theory" of relief, and having reversed the grant of summary judgment as to Reiman's main claims, we conclude that it would likewise be inappropriate and premature to grant summary judgment on any alternative theory of relief alleged.  *See **State v. Blalock***, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989).

## CONCLUSION

¶20    In short, we conclude that the circuit court erroneously granted Delaney's motion for summary judgment, and we remand this matter for further proceedings consistent with this opinion, including a trial on Reiman's claims.[5]

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[5] Reiman suggests that, on remand, amendment of the pleadings to conform to the evidence would be appropriate in light of a statement by the circuit court that the evidence suggests that Reiman and Delaney had a partnership.  Reiman fails to provide a record cite for this statement from the circuit court, but it would appear that he points to a statement by the circuit court in its written decision stating, "Such messages *suggest a partnership* and that the successive years' profits were due to the actual work of both parties." (Emphasis added.)  Taking into account the surrounding context, we do not construe the circuit court's statement to be a suggestion that amendment of the pleadings to add a claim for a common law partnership would be appropriate.  Therefore, we do not address the matter further.